## DIAMOND FERTILISER AND CHEMICAL CORPORATION *v.* COMMODITIES TRADING INTERNATIONAL CORPORATION (13633)

PETERS, C. J., SHEA, CALLAHAN, COVELLO and HULL, Js.

Argued April 6—decision released June 20, 1989

*Gerald E. Fogerty,* for the appellant (plaintiff).

*Steven R. Humphrey,* with whom was *Michelle deGarmeaulx,* for the appellee (defendant).

PETERS, C. J. The central issue in this appeal is whether the applicability of the rules of the Society of Maritime Arbitrators (SMA) made an arbitration award timely. In accordance with an agreement modifying the arbitration provision in their contract, the plaintiff Diamond Fertiliser & Chemical Corporation and the defendant Commodities Trading International Corporation submitted a contract dispute to a panel of three arbitrators. The panel's award of damages to the defendant was rendered more than thirty days from the date of the arbitration hearings. Alleging a violation of General Statutes § 52-416 (a),[1] the plaintiff filed an application in the Superior Court to vacate the arbi-

---

[1] General Statutes § 52-416 (a) provides: "If the time within which an award is rendered has not been fixed in the arbitration agreement, the arbitrator or arbitrators or umpire shall render the award within thirty days from the date the hearing or hearings are completed, or, if the parties are to submit additional material after the hearing or hearings, thirty days from the date fixed by the arbitrator or arbitrators or umpire for the receipt of the material. An award made after that time shall have no legal effect unless the parties expressly extend the time in which the award may be made by an extension or ratification in writing."

tration award as untimely. The defendant thereupon filed an application for an order confirming the award. The trial court, after a hearing on stipulated facts, concluded that the award was timely because the arbitration was governed by the rules of the SMA. The plaintiff filed an appeal in the Appellate Court which, pursuant to Practice Book § 4023, we transferred to this court. We find no error.

The trial court heard this case entirely on a joint stipulation of facts, which establishes the following. The dispute between the parties arose out of a written contract, dated March 11, 1986, for the sale of sulfur and its transportation by sea. That contract contained an arbitration clause providing that any controversy was to be settled by arbitration "in accordance with the laws of the State of Connecticut and the rules then obtaining of the American Arbitration Association." In May, 1987, the parties, through their attorneys, agreed in writing to remove the arbitration from the jurisdiction of the American Arbitration Association (AAA) and to establish their own arbitration panel. Pursuant to this agreement, each party chose one arbitrator and the two arbitrators were then authorized to choose the third arbitrator.[2] John J. Kilbride (chairman) became the third arbitrator and the chairman of the arbitration panel.

---

[2] The parties stipulated that: "Subsequently, Gerald E. Fogerty ('Mr. Fogerty'), the attorney for Diamond, and Steven A. Coploff ('Mr. Coploff'), the attorney for CTI, began discussing the possibility of removing the arbitration from the jurisdiction of the American Arbitration Association (the 'AAA') and establishing their own arbitration panel. Between May 13 and 15, 1987, Messrs. Fogerty and Coploff did reach such an agreement. That agreement was set forth in writing, a copy of which is annexed hereto as Exhibit C. Having been informed that its participation was no longer required in this matter, the AAA closed its file on this matter on or about June 10, 1987."

The agreement provided in pertinent part:

"1. The arbitration shall take place in the town of Greenwich, CT.

On June 3, 1987, the chairman informed the parties that the arbitration would proceed on June 18, 1987, and stated, "I would also like your confirmation that the hearings will proceed in accordance with the Rules of the Society of Maritime Arbitrators." The AAA, informed that its participation was no longer required, closed its file on the matter on June 10, 1987.

The arbitrators held evidentiary hearings on June 18 and 23, 1987. The parties submitted post-hearing briefs on September 25, 1987, and reply briefs on October 6, 1987. The plaintiff submitted additional information on October 29, 1987, in response to an inquiry from the chairman regarding the manner in which the plaintiff had calculated its damages.

The chairman, on November 2, 1987, wrote to the parties' attorneys that "[t]he panel is striving to have the award distributed before the end of the month" and requested that they sign an addendum. The addendum, without referring specifically to the rules of the SMA, provided, inter alia, that the arbitrators were to be commercial men and that "any arbitration hearings [were to] be held in the City of New York, but in accordance with the laws of the State of Connecticut."[3] In accord-

---

"2. Each party shall designate one arbitrator, on or before the date of this memorandum letter, and shall notify the other, in writing, of the name and address of his designee;

"3. The two arbitrators so designated shall choose a third arbitrator on or before May 22, 1987. If by that date they have not agreed upon a candidate who has in turn agreed to serve, then either party may petition a judge of the Supreme Court of the State of New York to appoint the third arbitrator; such petition may be made *ex parte*, on notice to the other party.

"Except as so modified, the arbitration clause and the remainder of the Contract shall remain unchanged and in full force and effect."

[3] The addendum provided that the clause entitled "Arbitration" in the contract between the parties be amended to read: "Should any dispute arise between Buyers and Sellers the matter shall be referred to three persons, one to be appointed by each of the parties hereto and the third by the two so chosen. Their decision or that of any two of them shall be final and for

ance with the chairman's request, the attorneys for the parties met on November 9, 1987, signed the addendum, and mailed it back to the chairman.

The chairman again wrote to the parties' attorneys on December 3, 1987, stating, "[t]he Award covering the findings of the arbitration panel that heard the subject dispute is in the final stages of preparation and should be distributed by mid-December." In this letter, the chairman also requested confirmation from each attorney that he was holding $5314.95 in escrow on behalf of his client to pay the panel's fees and expenses. On December 9, 1987, and December 11, 1987, the attorneys for the defendant and for the plaintiff respectively wrote appropriate confirmatory letters to the chairman.

The final award rendered by the panel on December 15, 1987, included an order that the defendant pay the plaintiff $92,229.57. The plaintiff filed an application to vacate the award, and the defendant filed a cross application to confirm it. Whether the award was timely under the provisions of § 52-416 was the only issue raised in the applications. The trial court ruled for the defendant, determining that, although the parties had never expressly confirmed in writing that the arbitration would proceed in accordance with the rules of the SMA, "there was no objection and the conduct of the parties subsequent to the date of said letter, leaves no doubt that both parties were aware that they were operating under the rules of the (SMA)." Accordingly, the court concluded that the SMA rules governed and that

the purpose of enforcing any Award. The Arbitrators shall be commercial men. This agreement may be made a rule of the Court.

"By mutual agreement any arbitration hearings shall be held in the City of New York, but in accordance with the laws of the State of Connecticut.

"All other terms and conditions of the Contract of Sale remain unchanged."

the award was therefore timely. The plaintiff has appealed from this adverse judgment.

In its appeal, the plaintiff claims that the trial court erred in finding that the arbitration was conducted in accordance with the rules of the SMA. The defendant counters that the finding was supported by the evidence and also advances alternate grounds to confirm the award. We agree that the arbitration was conducted pursuant to the rules of the SMA and conclude further that, even if it were not, the trial court did not err in confirming the award because the plaintiff had waived any right to object to the award's timeliness.

I

Before we examine the trial court's determination that the rules of the SMA governed the arbitration, it is important to emphasize the principles that inform our review of private consensual arbitration. This court has long recognized and endorsed arbitration as " 'an alternative method of settling disputes "intended to avoid the formalities, delay, expense and vexation of ordinary litigation." *Bridgeport* v. *Bridgeport Police Local 1159,* 183 Conn. 102, 107, 438 A.2d 1171 (1981) . . . .' " *New Haven* v. *AFSCME, Council 15, Local 530,* 208 Conn. 411, 415, 544 A.2d 186 (1988); *O & G/O'Connell Joint Venture* v. *Chase Family Limited Partnership No. 3,* 203 Conn. 133, 145, 523 A.2d 1271 (1987); *Administrative & Residual Employees Union* v. *State,* 200 Conn. 345, 349, 510 A.2d 989 (1986). We have frequently stated that " 'arbitration is the favored means of settling differences . . . .' " *Watertown Police Union Local 541* v. *Watertown,* 210 Conn. 333, 338, 555 A.2d 406 (1989); *Board of Education* v. *AFSCME,* 195 Conn. 266, 270, 487 A.2d 553 (1985). Accordingly, when arbitration is consensual, the scope of judicial review is generally limited to a consideration of the reasons provided in General Statutes

§ 52-418 (a).[4] *Watertown Police Union Local 541* v. *Watertown,* supra; *O & G/O'Connell Joint Venture* v. *Chase Family Limited Partnership No. 3,* supra, 154. " 'A challenge of the arbitrator's authority is limited to a comparison of the award to the submission' "; *Watertown Police Union Local 541* v. *Watertown,* supra, 338; *Bic Pen Corporation* v. *Local No. 134,* 183 Conn. 579, 584, 440 A.2d 774 (1981); and the court may not review the award for errors of law or of fact. *Stratford* v. *Local 134, IFPTE,* 201 Conn. 577, 584, 519 A.2d 1 (1986); *Wilson* v. *Security Ins. Group,* 199 Conn. 618, 626–27, 509 A.2d 467 (1986). Because the parties have consented to arbitration and have framed the issues to be arbitrated, in reviewing the arbitration award we "will make every reasonable presumption in favor of the arbitration award and the arbitrator's acts and proceedings." *O & G/O'Connell Joint Venture* v. *Chase Family Limited Partnership No. 3,* supra, 145; *Administrative & Residual Employees Union* v. *State,* supra.

In light of these governing precedents, we are unpersuaded by the plaintiff's contention that all arbitration agreements must be strictly construed. Once the parties have agreed to arbitrate their disputes, deference to the authority of the designated arbitrators limits the scope of judicial scrutiny of the underlying contract. Whether a different principle applies when the parties

[4] General Statutes § 52-418 (a) provides in relevant part: "[T]he superior court . . . shall make an order vacating the award if it finds any of the following defects: (1) If the award has been procured by corruption, fraud or undue means; (2) if there has been evident partiality or corruption on the part of any arbitrator; (3) if the arbitrators have been guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown or in refusing to hear evidence pertinent and material to the controversy or of any other action by which the rights of any party have been prejudiced; or (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made."

seek a judicial resolution of a disagreement about an intent to consent to arbitration is a question we need not resolve in the circumstances of this case. For this reason, the plaintiff's reliance on *Wesleyan University* v. *Rissil Construction Associates, Inc.,* 1 Conn. App. 351, 355, 472 A.2d 23, cert. denied, 193 Conn. 802, 474 A.2d 1259 (1984), and *McCaffrey* v. *United Aircraft Corporation,* 147 Conn. 139, 142, 157 A.2d 920, cert. denied, 363 U.S. 854, 80 S. Ct. 1636, 4 L. Ed. 2d 1736 (1960), is misplaced.

## II

Turning to the merits of the present controversy, we conclude that the trial court did not err in upholding the arbitrators' award. The plaintiff challenges neither the undisputed facts set forth in the memorandum of decision[5] nor the court's conclusion that "the award was timely under [the SMA] rules."[6] Although the plaintiff challenges the court's conclusion that "the conduct of the parties subsequent to the date of said let-

---

[5] The memorandum of decision states: "The dispute between the parties arose out of a written contract which had an arbitration clause that referred to the rules of the American Arbitration Association, (AAA). The parties subsequently removed the arbitration from the jurisdiction of the (AAA) and set up their own panel. The chairman of said panel informed both parties that he would like confirmation that the hearings proceed in accordance with the rules of the Society of Maritime Arbitrators, (SMA). The parties never confirmed in writing, however there was no objection and the conduct of the parties subsequent to the date of said letter, leaves no doubt that both parties were aware that they were operating under the rules of the (SMA). The award was timely under said rules."

[6] The parties filed their reply briefs on October 6, 1987, and the arbitrators rendered the award on December 15, 1987. The Society of Maritime Arbitrators, Inc., Rules for Arbitration Procedures § 27 provides in relevant part: "TIME. It is the obligation of the Panel to issue its Award promptly after the last evidence or brief has been received from the parties, but not later than 120 days therefrom. The onus of implementation of this goal shall be on the Chairman unless disability prevents his accomplishing it, in which case the other Panel members shall take necessary steps to meet the desired time limit. Failure of the Panel to abide by this provision shall not be grounds for challenge of the Award."

ter, leaves no doubt that both parties were aware that they were operating under the rules of the (SMA)," it has stipulated to its receipt of the chairman's letter requesting confirmation that the arbitration was to proceed under the SMA rules and has not alleged having voiced any objection thereto. In effect, therefore, the plaintiff does not claim a lack of knowledge about the arbitrators' intent to operate under the SMA rules, but rather challenges the trial court's implicit conclusion that the arbitrators were authorized to do so.

To decide whether the arbitrators, in conducting the arbitration pursuant to the SMA rules, exceeded their powers, " 'we need only examine the submission and the award to determine whether the award conforms to the submission.' " *O & G/O'Connell Joint Venture* v. *Chase Family Limited Partnership No. 3,* supra, 153; *Bic Pen Corporation* v. *Local No. 134,* supra, 584; *Board of Education* v. *Bridgeport Education Assn.,* 173 Conn. 287, 291, 377 A.2d 323 (1977). There are only two very narrow exceptions to the rule that a court may not substitute its own conclusions for the findings of the arbitrators on any matter submitted to the arbitrators. These exceptions occur when the arbitrators rule upon the constitutionality of a statute or order a party to engage in conduct in clear violation of public policy. *New Haven* v. *AFSCME, Council 15, Local 530,* supra, 416; *Stratford* v. *Local 134, IFPTE,* supra, 585–86. Neither exception has any relevance in the present circumstances.

Whether the objection to an arbitral award is procedural or substantive, where the submission is unlimited, subsequent judicial review is limited to the statutory standards contained in § 52-418. "Section 52-418 . . . defines the statutory grounds upon which a court may vacate an arbitrator's award and cannot be construed to create any distinction in the standard of review applicable to his decision of procedural as opposed to sub-

stantive questions. In the absence of a legislative directive, we are not inclined in this instance to enlarge the grounds for upsetting voluntary arbitration awards beyond those prescribed by the statute." *East Hartford* v. *East Hartford Municipal Employees Union, Inc.,* 206 Conn. 643, 650, 539 A.2d 125 (1988) (arbitrator, not court, to decide if grievance was timely filed). Even a dispute about the arbitrability of an issue, if the parties have submitted the issue of arbitrability to the arbitrators, is ordinarily definitively resolved by an arbitration award. *New Haven* v. *AFSCME, Council 15, Local 530,* supra, 414; *East Hartford* v. *East Hartford Municipal Employees Union, Inc.,* supra, 648; *Gary Excavating, Inc.* v. *North Haven,* 164 Conn. 119, 121–25, 318 A.2d 84 (1972) (if contract provides unlimited submission of disputes to arbitration, arbitrators to decide if party waived contractual right to arbitrate because complaint untimely).

The plaintiff argues that the parties to an arbitration agreement retain the right to structure an arbitration submission so as to stipulate, in binding fashion, the rules by which the arbitration is to proceed. That proposition may well be accurate in the abstract. It does not, however, resolve the particular question before us, which is whether the trial court correctly concluded that the arbitration panel may determine what governing rules the parties have selected. The plaintiff maintains that the arbitrators have no such authority. We are not persuaded.

The plaintiff, as the party challenging the award, bears the burden of demonstrating that the arbitration award violates the parties' agreement. *O & G/O'Connell Joint Venture* v. *Chase Family Limited Partnership No. 3,* supra, 145–46; *Stratford* v. *Local 134, IFPTE,* supra, 585. Making " 'every reasonable presumption in favor of . . . the arbitrator's acts and proceedings' "; *New Haven* v. *AFSCME, Council*

*15, Local 530,* supra, 417; *O & G/O'Connell Joint Venture* v. *Chase Family Limited Partnership No. 3,* supra, 145; we conclude that the plaintiff has not met this burden. In this case, the plaintiff has failed to demonstrate that the arbitrators "exceeded their powers or . . . imperfectly executed them"; § 52-418 (a) (4); in determining to conduct the arbitration in accordance with SMA rules. When the plaintiff failed to object to continuation of the arbitration after the chairman had asked for "confirmation that the hearings will proceed in accordance with the Rules of the [SMA]," it at least acquiesced in having the arbitration panel determine that the SMA rules had been agreed upon. The court could appropriately have relied as well on the need to establish some governing ground rules after the parties had disavowed further reference to the AAA rules without expressly substituting any alternative therefor.[7]

The plaintiff, nonetheless, contends that when the parties stipulated that the arbitration would be governed by Connecticut statutory law, they intended that *only* Connecticut statutory law would apply and that Connecticut law renders the award a nullity because it was issued more than thirty days after the hearings without the express written consent of the parties to an extension of time. For this argument, the plaintiff relies upon *Marsala* v. *Valve Corporation of America,* 157 Conn. 362, 254 A.2d 469 (1969), in which we held that § 52-416 invalidated an arbitration award not rendered within the statutory time limitations when the parties had not agreed to an extension in writing. Id., 368–69.

The holding of *Marsala* would support the plaintiff's position only if the parties had not agreed to confer upon the arbitrators greater temporal latitude than

---

[7] See footnote 3, supra.

§ 52-416 affords to them. In *Marsala* itself, we acknowledged that "[s]ections 52-413 and 52-416, taken together, permit the parties to exercise their common-law right to fix, in the agreement for arbitration, the time in which the arbitrators must render their award." Id., 369. Subsequently, we held, in *Administrative & Residual Employees Union* v. *State*, supra, that an arbitration agreement permitting oral extensions of the time for an arbitral award served to validate the belated award despite § 52-416's requirement of a written extension. We there stated that "[§ 52-416] begins with the condition: '[i]f the time within which an award is rendered has not been fixed in the arbitration agreement . . . . ' We construe this proviso as making the application of the entire section, including the requirement that extensions be in writing, conditional upon the parties having not agreed otherwise. This reading is consistent with our general policy of construing our arbitration statutes liberally to encourage the use of arbitration as an alternate form of dispute resolution." Id., 348–49, citing *International Brotherhood of Teamsters* v. *Shapiro,* 138 Conn. 57, 68–69, 82 A.2d 345 (1951). "We also point out that in *Marsala,* we invalidated the award only grudgingly and commented that 'we find nothing to commend in this plaintiff's conduct in seeking to have the award vacated under § 52-416.' " *Administrative & Residual Employees Union* v. *State,* supra, 349, quoting *Marsala* v. *Valve Corporation of America,* supra, 369. Consequently, where an award is timely rendered according to the rules provided in the parties' agreement, in this case according to the SMA rules, written consent to an extension of time is not required. We therefore conclude, that the trial court did not err in determining that the arbitration award in this case was not untimely.

## III

Even if we were to conclude that the arbitration award was not governed by the SMA rules, the plain-

tiff could not prevail in its attempt to vacate the award as untimely because it waived any right to object to the timeliness of the award by failing to object when it was notified of the date on which the award would be rendered.[8] " 'We have made it clear that we will not permit parties to anticipate a favorable decision, reserving a right to impeach it or set it aside if it happens to be against them, for a cause which was well known to them before or during the trial.' *Krattenstein* v. *G. Fox & Co.*, 155 Conn. 609, 616, 236 A.2d 466 (1967); *Seal Audio, Inc.* v. *Bozak, Inc.*, [199 Conn. 496, 517, 508 A.2d 415 (1986)]." *Bowman* v. *1477 Central Avenue Apartments, Inc.*, 203 Conn 246, 251–52, 524 A.2d 610 (1987) (failure to raise lack of consent to referral of case to trial referee until after referee's report filed). In *AFSCME* v. *New Britain*, 206 Conn. 465, 538 A.2d 1022 (1988), we applied this principle to arbitration and held that the plaintiffs' failure to raise the issue of timeliness prior to the issuance of an arbitration award, in arbitration pursuant to General Statutes § 31-98, operated as a waiver of their right to assert the award's lack of timeliness. " 'In view of the slow pace of the proceedings up to the time the hearings were concluded, and *the failure of either party to object or claim prejudice because of it,* the court's conclusion [that the

---

[8] We note, in addition, that proceeding with arbitration without objection after knowledge the arbitrators will not render the award within the time provided constitutes a waiver of any objection pursuant to both the SMA and AAA rules. The Society of Maritime Arbitrators, Inc., Rules for Arbitration Procedures § 33 provides: "WAIVER OF RULES. Any party who proceeds with the arbitration after knowledge that any provision or requirement of these Rules has not been complied with, and who fails to state his objection thereto in writing or on the record shall be deemed to have waived his right to object."

The American Arbitration Association, Commercial Arbitration Rules § 38 provides: "WAIVER OF RULES. Any party who proceeds with the arbitration after knowledge that any provision or requirement of these rules has not been complied with and who fails to state objection thereto in writing, shall be deemed to have waived the right to object."

award was valid] was not erroneous as a matter of law.' (Emphasis added.)" Id., 469, quoting *Danbury Rubber Co.* v. *Local 402,* 145 Conn. 53, 59–60, 138 A.2d 783 (1958). In the present case, the plaintiff's attorney corresponded with the chairman after the chairman had notified the parties that the panel was "striving to have the award distributed before the end of [November]." He did not object to the untimeliness of the award, but rather provided a signed addendum to the parties' agreement. On December 3, 1987, the plaintiff was notified that the "Award . . . is in the final stages of preparation and should be distributed by mid-December." Again, the plaintiff did not object that the award was untimely. Instead, on December 11, 1987, in response to the chairman's request, the plaintiff's attorney wrote to the chairman confirming that his firm was holding $5314.95 in escrow on behalf of his client in order to pay the panel's fees and expenses. The panel rendered the award four days later, on December 15, 1987. The plaintiff then objected that the award was untimely. The plaintiff's attempt to manipulate the arbitration process by reserving objection until after the announcement of the arbitral award is precisely the kind of conduct that we discountenanced in *Krattenstein* v. *G. Fox & Co.,* supra. We will not reward such conduct here.

There is no error.

In this opinion the other justices concurred.