[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: ARBITRATORS' AWARD
Involved in this proceeding are plaintiff's motion to vacate and defendant's motion to confirm an arbitrators' award rendered pursuant to former 38-175c (now 38a-336 (c)). Two issues are presented: (1) whether the arbitrators' decision was timely in view of the language of 52-416 (a) and (2) whether the majority of the arbitrators were correct in their decision that when the plaintiff was injured he was not operating a vehicle covered by the uninsured motorist provisions of the two policies issued by defendant.
The two questions presented require different treatment. On the issue of timeliness, the court is the trier of fact for the determination of coverage, however, the court reviews the doings of the arbitrators.
 I.
From the letters that were submitted as exhibits and from the contents of the file, the court finds that with respect to the issue of timeliness, the facts set forth below were established.
On March 6, 1990, Attorney Moore, representing plaintiff, wrote to Attorney Kernan, defendant's counsel, suggesting that the arbitrators decide first whether there was coverage. Attorney Moore's plan was that if the question of coverage were resolved favorably to the plaintiff, then evidence as to damages could be presented.
On June 19, 1991, Attorney Moore wrote to Arbitrator McDermott, chairman of the panel, with copies to Attorney Kernan and the other two arbitrators, Kennedy and Ide. Attorney Moore's letter stated that he and Attorney Kernan had reached an agreement whereby the case would be bifurcated with the panel deciding the question of coverage first. Attorney Moore's letter went on to say that a hearing would not be required to resolve the question of coverage. Arbitrator McDermott was asked, in the letter, to establish a briefing schedule. A period of forty-five days was requested for initial simultaneous briefs and another fifteen days for reply briefs.
In a letter addressed to Attorney Moore and Attorney Kernan on June 26, 1991, with copies for the other members of the panel, CT Page 5029 Arbitrator McDermott set August 12 and August 28, 1991, as the dates when the parties would provide each arbitrator with copies of their briefs and reply briefs. The date, time and place for the arbitrators' meeting was arranged for September 11, 1991, at 3:00 p.m., in Arbitrator McDermott's office.
On July 3, 1991, Attorney Kernan wrote to Arbitrator McDermott, with copies to Attorney Moore and the other arbitrators, stating that the lawyers for the parties had agreed on an advancement of the date for the reply briefs to September 6, 1991. On July 31, 1991, Attorney Kernan sent copies of the two insurance policies and a transcript of the plaintiff's deposition to each arbitrator.
The meeting of arbitrators scheduled for September 11, 1991, was cancelled by Arbitrator McDermott, who, on September 6, 1991, wrote to co-arbitrator Ide that he and Arbitrator Kennedy would not be able to attend due to conflicting trial schedules. For a substituted date, McDermott suggested October 7, 1991. In an answering letter, dated September 10, 1991, Arbitrator Ide informed Arbitrator McDermott of his unavailability on October 7th, but that he could be present on either of the next two Mondays. As with all other correspondence, copies of the letters between McDermott and Ide were sent to Attorneys Moore and Kernan.
As matters turned out, the arbitrators did not meet until November 18, 1991, when they reviewed the evidence consisting of the two insurance policies and the plaintiffs deposition, as well as the legal briefs submitted by the parties. Two of the arbitrators, McDermott and Ide, in a majority opinion, decided the question of coverage adverse to the plaintiff. Copies of their decision bearing the date of November 18, 1991, were sent to the parties' lawyers on or about November 27, 1991. The dissenting opinion of Arbitrator Kennedy carries the date of December 6, 1991.
General Statutes 52-416, the source of the dispute as to timeliness, reads as follows:
 (a) If the time within which an award is rendered has not been fixed in the arbitration agreement, the arbitrator or arbitrators or umpire shall render the award within thirty days from the date the hearing or hearings are completed, or, if the parties are to submit additional material after the hearing or hearings, thirty days from the date fixed by the arbitrator or arbitrators or umpire for the receipt of the material. An award made after that time shall have no legal effect CT Page 5030 unless the parties expressly extend the time in which the award may be made by an extension or ratification in writing.
 (b) The award shall be in writing and signed by the arbitrator or arbitrators, or a majority of them, or by the umpire. Written notice of the award shall be given to each party.
In purported reliance on Artese v. Allstate Insurance, 6 Conn. L. Rptr. No. 2, 37 (1992) and Hayes v. Travelers Indemnity Co., 26 Conn. App. 418 (1992), plaintiff insists that 52-416 must be interpreted literally. Therefore, he reasons that the statutory deadline of thirty days ran from August 28, 1991, the date initially fixed by Arbitrator McDermott for the submission of the parties' reply briefs. This claim first appeared in the plaintiff's reply memorandum filed in court on February 18, 1992.
Defendant argues that on two grounds the timeliness of the arbitrators' decision should not be an issue. First, because the plaintiff did not raise the question within thirty days from notice of the award as required by General Statutes 52-410. Second is that the plaintiff's conduct through his counsel, amounted to a waiver of the thirty day limitation which 52-416
requires for arbitrators' awards.
A reading of Hayes v. Travelers Indemnity Co., supra shows it to be concerned more with the period of time implied by 52-416
for distribution of the arbitrator's decision, rather than any explanation of the time limit that the statute expressly sets for the making of the award. And for the chronological situation presented by the instant case, the court is convinced that Artese v. Allstate Insurance, supra pays insufficient attention to Supreme Court precedents, particularly Diamond Fertiliser 
Chemical Corp. v. Commodities Trading Intl. Corp., 211 Conn. 541,552-54 (1989).
To be sure, as mentioned in Artese, the principal issue in Diamond Fertiliser was whether the proceeding was governed by the rules, including time limits, of the Society of Maritime Arbitrators. Our Supreme Court agreed that the arbitration was conducted pursuant to the rules of the SMA, but concluded further that even if it were not, the award was properly confirmed because the plaintiff had waived any right to object the award's lack of timeliness. 211 Conn. at 546. The court explained that on several occasions it had held that a party would not be permitted to anticipate a favorable decision and reserve a right to impeach or set aside the decision if it happened to be unfavorable due to a cause that was well-known to the party before or during the CT Page 5031 trial. 211 Conn. at 553. Moreover, Diamond Fertiliser, supra notes that the principle of waiver had previously been applied to a failure to claim untimeliness prior to the issuance of a labor arbitration award under 31-98 in A.F.S.C.M.E. v. New Britain,206 Conn. 465, 468-69 (1988).
The relevance and importance of waiver in this case is underscored by a few additional factual findings. When the parties extended time for filing their reply briefs with the arbitrators to September 6, 1991, the thirty day period allowed by52-416 was similarly extended to Monday, October 7, 1991. Lamberti v. Stamford, 131 Conn. 386, 399 (1944) (when last day on which statute requires act to be done falls on a Sunday, the permissible period is extended one day). Section 52-416 requires not only the rendering of the award, but also notification of the same within thirty days from the date when the hearing or hearings are completed. Hayes v. Travelers Indemnity Co., supra at 421. From the letter from Arbitrator Ide to Arbitrator McDermott both parties knew that the arbitrators would not be meeting until some undetermined date after October 7, 1991. Before receiving the arbitrators' award, plaintiff did not protest the delay. After receipt of the arbitrators' decision, plaintiff did not complain about its untimeliness until he filed his reply brief in court on February 18, 1992.
On present-day decisional law, the court concludes that plaintiff has waived any right to object to the untimeliness of the award. Although the language in 52-416 has been construed as mandatory, Marsala v. Valve Corporation of America, 157 Conn. 362,369 (1969), the progression from Marsala through Administrative 
Residual Employees Union vs. State, 200 Conn. 345, 348-49 (1986) to Diamond Fertiliser is clear. The provisions of 52-416 that extensions or ratifications of time variances must be in writing or an out-of-time award will have no legal significance are applicable only if the parties have not otherwise agreed. Diamond Fertiliser, supra at 552; Administrative Residual Employees Union, supra. The court concludes that in not objecting to the arbitrators' delayed meeting, the parties manifested an agreement that the award would be delayed.
The court also agrees with defendant's contention that52-420 bars the belated claim of untimeliness in the rendition of the award. By not raising the claim of untimeliness as an original ground in the motion to vacate, plaintiff, because of52-420, is prohibited from making such a claim more than thirty days after notification of the arbitrators' award. Textile Workers' Union v. Uncas Printing Finishing Co., 20 Conn. Sup. 91,97 (1956). Thus, even if untimeliness, as an issue, survived the rendition and notification of the award, the plaintiff lost the right to present that claim by failing to abide by the time CT Page 5032 stricture in 52-420.
 II.
Judicial review of compulsory arbitration proceedings can involve questions of both law and fact. See Chmielewski v. Aetna Casualty Surety Co., 218 Conn. 646, 656, 659 (1991). Where the issues concern the arbitrators interpretation and application of the law, the court is obligated to conduct a de novo review. Streitweiser v. Middlesex Mutual Assurance Co., 219 Conn. 371,375 (1991); Chmielewski, supra at 656. With respect to the arbitrators' factual findings, however, the standard of review is whether, from the record, the basic facts have been determined from substantial evidence and whether any inferences drawn from those facts were reasonable. Chmielewski, supra at 659.
At the outset, the parties are in disagreement as to the nature of the issues that their case presents. The court disagrees with the defendant's assessment that only factual issues are involved. In deciding that when the plaintiff was injured, he was not operating a "replacement vehicle", and hence, there was no uninsured motorist coverage, the arbitrators, of necessity, had to interpret provisions of a policy and to apply them to the facts at hand. Further, the question of whether a factual finding is supported by substantial evidence is itself a question of law requiring de novo review. Chmielewski, supra at 667.
The evidence submitted to the arbitrators consisted of two policies issued to the plaintiff by the defendant, no. AO 2-212-248683-0388 WY and no. AO 2-212-248683-027 and the transcript of the plaintiff's deposition. In policy AO 2-212-248683-038 WY, the insured vehicle was a 1985 Honda automobile and in policy AO 2-212-248683-027, the insured vehicle was a 1985 Honda motorcycle. Both policies were in effect on June 10, 1988, when the defendant was injured.
When the plaintiff was injured, he was operating a 1986 Suzuki motorcycle which he had purchased on May 2, 1988. The Suzuki was not listed as a covered vehicle under either insurance policy. Both policies contained the following provision in the amendments to coverage section under item II, uninsured motorists coverage:
 D. Exclusion A.1 is replaced by the following:
 We do not provide uninsured motorists coverage for bodily injury sustained by any person:
1. While occupying, or when struck by, any CT Page 5033 motor vehicle or motorcycle owned by that person or owned by you for which the security required by the Connecticut Financial Responsibility Act is not in effect. This includes trailer of any type used with that vehicle.
The arbitrators held that "[i]f the Suzuki motorcycle was not insured or otherwise in compliance with Connecticut's Financial Responsibility Act, the above exclusion would apply." Apparently, the plaintiff has no quarrel with this portion of the arbitrators' decision or with the subsequent finding that "[t]here is no evidence that the Suzuki was insured under any other policy of insurance or had otherwise met the requirements of the Connecticut Financial Responsibility Act."
Policy A0 2-212-248683-027, however, contained the following language under "Definitions":
 B. The definition of your covered auto is replaced by the following:
Your covered auto means:
 1. Any miscellaneous type vehicle shown in the schedule or in the declarations.
 2. Any of the following types of vehicles on the date you become the owner:
a. a private passenger auto;
b. a pickup or van; or
 c. any miscellaneous type vehicle of the same type shown in the Schedule or in the declarations.
This provision apples only if:
 a. You acquire the vehicle during the policy period.
 b. you ask us to insure it within 30 days after you become the owner; and
 c. with respect to a pickup or van, or other insurance policy provides coverage for that vehicle. CT Page 5034
 If the vehicle you acquire replaces one of the same type shown in the Schedule or in the Declarations, it will have the same coverage as the vehicle it replaced. You must ask us to insure a replacement vehicle within 30 days if:
 a. you wish to add or continue coverage for damage to your auto; or
 b. it is a pickup or van used in any business other than farming or ranching.
The arbitrators interpreted this clause to mean that "if the new vehicle is not a pickup or van used in any business other than farming or ranching and it is not a vehicle upon which the insured wishes to add or continue `coverage for damage to your auto', and if it replaces the vehicle identified in the Schedule or in the Declarations, then the insured is relieved of the obligations, within thirty (30) days after he has become the owner to ask the company to insure it. Again, the plaintiff does not disagree with the arbitrators' construction.
The basis of plaintiff's motion to vacate is the conclusion of two of the three arbitrators that the Suzuki was not a replacement vehicle for the Honda motorcycle. Upon deciding that the status of the Suzuki was to be determined as of May 2, 1988, the date of purchase, the majority of the arbitrators found that plaintiff admitted driving the Honda motorcycle at various times, although sporadically, after he purchased the Suzuki, and before the accident on June 10, 1988. Evidence of the continued use of the Honda motorcycle for purposes within the risk covered by policy AO 2-212-278683-027 persuaded the majority that the Suzuki had not actually replaced the Honda motorcycle, and that it was not plaintiff's intent as of May 2, 1988, that the Suzuki, rather than the Honda, should be the insured vehicle. The conclusion that the Suzuki was not a replacement vehicle meant that for it to be a covered vehicle, plaintiff had to request its inclusion in the policy within 30 days after becoming the owner. Such request was concededly not made before the accident.
The issue of when a vehicle is a replacement under automobile insurance provisions of a policy appears not to have been decided by our appellate courts. From other jurisdictions, however, decisions point out that there is a choice of law. In Government Employees Ins. Co. v. Berry, 729 F. Sup. 872 (M.D. Ala. 1989), two approaches are described. One called the "formalistic", has as a requirement that the vehicle described in the policy must be disposed of or otherwise be rendered inoperable at the time of the replacement. 724 F. Supp. at 874. The other, referred to in the CT Page 5035 decision as the "alternative approach", looks to the policy holder's intent and conduct in the totality of the circumstances.724 F. Supp. at 876.
In Government Employees Ins. Co. v. Berry, there were no Alabama cases upon which the district court could rely. The "alternative" approach was chosen, however, because of pronouncements in other areas of insurance law that had been made by Alabama courts, viz: "Ambiguous language in insurance policies must be construed in light of an interpretation that would be placed on such language by ordinary people; and conditions and provisos in an insurance policy should be construed liberally in favor of the insured." Similar language appears in opinions from our Supreme Court. e.g. Streitweiser v. Middlesex Mutual Assurance Co., supra at 375; Hammer v. Lumbermens Mutual Casualty Co., supra at 583. For this reason and because, on the facts, the plaintiff could not recover under the "formalistic" approach, the court will assume that the "alternative" approach prevails in Connecticut.
Unless otherwise defined in the policy, which is not the situation here, "replace" has the ordinary meaning of "to take the place of, to serve as a substitute or equivalent for or as a successor of a person or thing." Pomares v. Kansas City Southern Ry. Co., 474 So.2d 976, 979 (La.App. 1985); Continental Ins. Co. v. Entrikin, 680 P.2d 913, 917 (Kan.App. 1984). Pursuant to the "alternative" approach, whether one vehicle is a replacement for another is not contingent upon the policy holder selling or otherwise disposing of the vehicle described in the policy or upon a condition that the originally insured vehicle has become inoperative or unusable. Pomares v. Kansas City Southern Ry., supra at 980. But no citation has been supplied and the court, in its own research, has found none that permits an insured, under a replacement clause to use two vehicles and make his own determination as to which one is insured. Although the "alternative" approach does not require a change in possession of or title to the original vehicle, it does require an abandonment of use of that vehicle. 6B Appleman, Insurance Law Practice (Buckley ed.) 4293 (p. 168). Courts have been reluctant to permit automatic replacement coverage for a new vehicle when the insured has at his disposal the operative vehicle listed in the policy as such could amount to double exposure for the insurer. Filaseta v. Pennsylvania Threshermen Farmers Mutual Casualty Ins. Co., 209 Pa. Super. 322, 228 A.2d 18, 22 (1967).
It appears therefore, that even under the "alternative" approach, plaintiff was properly denied coverage so long as the findings of the arbitrators were supported by substantial evidence. Substantial evidence exists if the record "affords a substantial basis in fact from which the fact in issue can be CT Page 5036 reasonably inferred." Connecticut Building Wrecking Co. v. Carothers, 218 Conn. 580, 593 (1991), quoting from Briggs v. State Employees Retirement Commission, 210 Conn. 214, 217 (1989). The arbitrators finding that the plaintiff had driven the Honda motorcycle after the purchase of the Suzuki and before the accident certainly was supported by substantial evidence. In response to Attorney Kernan's question of whether he drove the Honda until he sold it in 1989, the plaintiff, at his deposition, answered: "No, I stopped riding it shortly after the accident, my accident that we're talking about. The bike wasn't running well, so sporatically [sic], like I said, I'd ride it and I finally sold it to a friend."
Moreover, there was substantial evidence for the arbitrators' finding concerning plaintiff's intent, although the date probably should be advanced from May 2, 1988, the date of purchase, to June 4, 1988, when the plaintiff took possession of the Suzuki from Adam's Suzuki in Watertown. Under the "alternative" approach, the insured's intent becomes important. See Rowland v. State Farm Mutual Auto. Ins. Co., 9 Wash. App. 460, 512 P.2d 1127, 1131
(1973); 12 G. Couch on Insurance (2d ed. Rhodes) 45-210 (p. 255). An ascertainment of intent is an inference of fact. Hanson Development Co. v. East Great Plains Shopping Center, Inc.,195 Conn. 60, 65 (1985). Intention, as a mental process, must be proven either by the statements or actions of the person whose conduct is being questioned. State v. Williams, 202 Conn. 349,356-57 (1987). Plaintiff is simply incorrect, however, in claiming that in a determination of intent, the arbitrators were bound by his uncontradicted statements. The arbitrators were not obliged to accept his statements as true and were empowered to determine his intent circumstantially from his actions. Id., State v. Mazzadra, 141 Conn. 731, 735 (1954).
 III.
For the reasons stated, the motion to confirm is granted and the motion to vacate is denied.
BARNETT, J.