[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Anthony Slez, an attorney, has filed an mended application to vacate an arbitration award rendered by the Legal Fee Arbitration Board of the Connecticut Bar Association (CBA) on February 17, 1995. The plaintiff brings CT Page 13231 the amended application pursuant to General Statutes § 52-418. The underlying arbitration proceeding concerned a fee dispute between Attorney Slez and the defendants, Frances Oliger, in her individual capacity and in her capacity as the conservator and guardian for Bernadette Oliger, and Bernard Oliger, as guardian for Bernadette Oliger. Prior to the arbitration, the Oligers were represented by Attorney Slez in three actions to recover damages for personal injuries they sustained as a result of a motor vehicle accident.
On or about February 3, 1994, the Oligers commenced the underlying arbitration proceeding by filing a petition for arbitration with the CBA. The petition contains the following allegations. On June 3, 1987, Frances Oliger and her daughter, Bernadette Oliger, were passengers in a motor vehicle operated by Bernard Oliger. On that date, the Oligers' vehicle struck the rear of a disabled dump truck. Both Frances and Bernadette Oliger sustained serious injuries as a result of the collision. The Oligers subsequently retained Attorney Slez to represent them.[1] In August of 1988, the parties settled with Bernard Oliger's insurer for $300,000.00. In June of 1992, Attorney Slez reached a settlement with the owner of the truck for $425,000.00 plus an annuity for the benefit of Bernadette Oliger. The Oligers allege that the present value of the annuity was less than $165,000.00, as evidenced by the cost to the insurer of the structure of the annuity.[2] The Oligers allege that the legal fee charged by Slez was based on the total structure of the payments over the entire guaranteed period of the annuity rather than on the present value of the annuity. The Oligers further allege that the total amount of the legal fees charged by Slez was $334,418.17, and that the amount of the legal fees in dispute before the CBA was "up to $75,000.00."
A hearing was held before the CBA on October 7, 1994. Briefs were submitted by the parties on November 7, 1994. On February 17, 1995, the arbitrators awarded $95,097.72 to the Oligers.
In his amended application, Slez seeks to vacate the arbitration award on the grounds that: (1) the award violates General Statutes § 52-416 and the CBA Rules for Arbitration of Fee Disputes (CBA Rules) because it was rendered more than thirty days after the hearing concluded; (2) the CBA lacked jurisdiction over the dispute because the plaintiff's fee was determined pursuant to a statutory provision ("Tort Reform CT Page 13232 I"); (3) the award was beyond the scope of the submission; (4) the CBA failed to allow the plaintiff to join his former partner to the action for purposes of indemnification or contribution; and (5) the arbitrators engaged in wrongful ex parte communications with witnesses after the conclusion of the taking of testimony. Slez also contends that the arbitration proceeding before the CBA was not a voluntary or consensual proceeding because the CBA Rules "coerce" participation by the person named in the petition as a respondent. On May 9, 1995, the Oligers filed a memorandum in opposition.
"Because we favor arbitration as a means of settling private disputes, [the courts] undertake judicial review of arbitration awards in a manner designed to minimize interference with an efficient and economical system of alternative dispute resolution." Garrity v. McCaskey,223 Conn. 1, 4-5, 612 A.2d 742 (1992). "Where the parties have voluntarily and contractually agreed to submit to arbitration and have delineated the powers of the arbitrators through their submission, then the scope of judicial review is limited by the terms of the parties' agreement and by the provisions of General Statutes § 52-418." American Universal Ins. Co. v.DelGreco, 205 Conn. 178, 185, 530 A.2d 171 (1987). "Every reasonable presumption and intendment will be made in favor of the award and of the arbitrators' acts and proceedings." BicPen Corporation v. Local No. 134, 183 Conn. 579, 585,440 A.2d 774 (1981). "The party challenging the award bears the burden of producing evidence sufficient to invalidate or avoid it, and only upon a showing that it `falls within the proscriptions of § 52-418. . . or procedurally violates the parties' agreement' will the determination of an arbitrator be subject to judicial inquiry." O G/O'Connell Joint Venturev. Chase Family Limited Partnership No. 3, 203 Conn. 133, 145-46,523 A.2d 1271 (1987).
 I
Slez argues that the arbitration proceeding before the CBA was not a voluntary or consensual proceeding. Slez contends that the CBA procedure is coercive because once a petitioner files for arbitration, a respondent is forced to either consent to the arbitration and participate in the proceedings, or have the proceedings go forward without the respondent's participation. Slez further contends the CBA CT Page 13233 procedure is coercive because if he refused to participate, the CBA would have proceeded without him, and then would have acted as an expert witness when the petitioner sought to confirm the arbitrators' award in the superior court.
CBA Rule V.7. provides that "[i]n the event the respondent fails or refuses to consent to binding arbitration within thirty (30) days after receipt of a copy of the petition, the Chairman of the Committee shall designate a panel to hear the matter without the respondent's participation." CBA Rule VII.2 provides in pertinent part that "[i]n the event of an award, whether to a client or to a lawyer, in a matter in which the other party has not executed a consent to binding arbitration, the Chairman of the Committee shall, if the party to whom the award has been made desires, designate a member of the Committee as an expert witness to testify within the State . . . on behalf of the party in whose favor the award has been made, in any suit against him or on his behalf in connection with the enforcement of the award."
It is surprising, to say the least, that the CBA, of all professional associations, would maintain a rule such as V.7, which provides for arbitration where at least one party refuses to arbitrate. Arbitration is a creature of contract.Southington v. Major Machinery Corporation, 1 Conn. App. 253,255 (1984). However, Slez's argument with respect to the "coercive" nature of the CBA Rules is without merit. Rather than seek to enjoin the arbitration or move to vacate an award made after a proceeding to which he did not consent, Slez ultimately consented in writing to the arbitration. Accordingly, Slez's first ground for vacating the arbitrators' decision must fail.
 II
In support of his application to vacate the award, Slez argues that the award violates General Statutes § 52-416 and the CBA Rules because it was rendered by the arbitrators more than thirty days after the conclusion of the hearings and the filing of additional briefs.
General Statutes § 52-416 (a) provides in pertinent part that "[i]f the time within which an award is rendered has not been fixed in the arbitration agreement, the. . . arbitrators CT Page 13234 . . . shall render the award within thirty days from the date the hearing was completed, or, if the parties are to submit additional material after the hearing . . . thirty days from the date fixed . . . for the receipt of the material. An award made after that time shall have no legal effect unless the parties expressly extend the time in which the award may be made by an extension or ratification in writing." "[A]bsent a written extension or ratification, an arbitrator would lack the power to enter an award more than thirty days after the completion of the hearing. Carr v. Trotta, 7 Conn. App. 272,275, 508 A.2d 799 (1986)." Wolf v. Gould, 10 Conn. App. 292,300, 522 A.2d 1240 (1987). "[N]ot only must the award be rendered within the thirty day time limit, but . . . notification of the award must also be given within the same thirty day time limit." Hayes v. Travelers Indemnity Co.,26 Conn. App. 418, 421, 601 A.2d 555 (1992); see also C.F.Wooding Co. v. Middletown Elk's Home Corporation, 177 Conn. 48
486-87, 418 A.2d 904 (1979).
The Oligers contend that § 52-416 is not applicable in the present case because the time limit was established by the CBA Rules. Section V.6. of the CBA Rules provides in pertinent part that "[a]ll decisions of all panels shall be made in writing and returned to the Central Office of the Connecticut Bar Association by the panel chairman along with the entire file within thirty (30) days after the conclusion of the hearing except in a case where there are exceptional or unusual conditions. Immediately following the entry of an award, the panel chairman shall notify both parties and the Chairman of the Committee."
General Statutes § 52-416, by its express terms, applies only where "the time within which an award is rendered has not been fixed in the arbitration agreement. . . ." Here, § V.6 of the CBA Rules establishes the applicable time limits for the arbitration. Thus, CBA Rule § V.6, which allows for thirty days plus an unspecified additional time period in a case where there are "exceptional or unusual conditions," applies, not § 52-416. It is not disputed that the hearing was held on October 7, 1994, or that final briefs were submitted by the parties on November 7, 1994. The record reflects that subsequent to November 7, 1994, no additional testimony was taken and no additional briefs or exhibits were submitted to the panel. Moreover, the parties did not grant any extensions of time to the arbitrators. Thus, the hearing concluded on CT Page 13235 November 7, 1994, and in the absence of any "exceptional or unusual conditions," the arbitrators' decision should have been filed on or before December 7, 1994. The arbitrators issued their decision on February 17, 1995.
It is unnecessary to determine whether there were "exceptional or unusual conditions" here because Slez has waived his right to claim that the award was untimely. With respect to the issue of waiver, "[o]ur Supreme Court has `made it clear that we will not permit parties to anticipate a favorable decision, reserving a right to impeach it or set it aside if it happens to be against them, for a cause which was well known to them before or during the trial.' Krattensteinv. G. Fox Co., 155 Conn. 609, 616, 236 A.2d 466 (1967). This same principle has been applied in the arbitration context, where the court has held that a plaintiff's failure to raise the issue of timeliness prior to the issuance of an arbitration award operates as a waiver of the right to assert the award's lack of timeliness. AFSCME v. New Britain,206 Conn. 465, 468, 538 A.2d 1022 (1988). In Diamond Fertiliser Chemical Corporation v. Commodities Trading InternationalCorporation, 211 Conn. 541, 554, 560 A.2d 419 (1989), the court rejected the plaintiff's belated objection to the timeliness of an award, stating adamantly that it would not reward such conduct where the plaintiff attempted `to manipulate the arbitration process by reserving objection until after the announcement of the arbitral award. . . .'"Capozzi v. Liberty Mutual Fire Ins. Co., 32 Conn. App. 250,256, 629 A.2d 424 (1992).
Slez had notice that the arbitrators' decision would be untimely once the thirty day period for filing the decision expired on December 7, 1994, and a decision had not been filed by the arbitrators. The record reflects that Slez failed to file an objection with the arbitrators, or otherwise notify them that he was prejudiced by their delay. Rather, Slez waited until after the arbitrators filed their untimely decision, and with knowledge that the decision was unfavorable to him, raised the timeliness issue for the first time in his application to vacate the decision, filed with this court on March 16, 1995. Thus, whether or not there were "exceptional or unusual conditions" which would excuse the arbitrators' delay in the present case, pursuant to the rule stated inCapozzi v. Liberty Mutual Fire Ins. Co., supra, 32 Conn. App. 256, Slez waived his right to object to the untimeliness of CT Page 13236 the arbitrators' decision because he failed to raise the objection to the arbitrators prior to the date they filed their decision.
 III
Slez argues that he did not enter into a written fee agreement with the Oligers and that his fee was computed pursuant to a statutory provision known as "Tort Reform I." The plaintiff contends that pursuant to the CBA Fee Dispute Rules, the CBA lacks jurisdiction over matters where legal fees are fixed by statute.
In response, the Oligers contend that the Tort Reform I statutes are not applicable to the present dispute because they merely set maximum amounts that could be charged on a matter. The Oligers contend that the issue before the arbitrators concerned the basis upon which Slez's total fee should have been calculated. The Oligers further argue that Slez should have raised his argument that the fees were controlled by Tort Reform I as a jurisdictional objection to the arbitration panel.
The issue of arbitrability is not waivable and may be raised to the court on a motion to vacate the award. White v.Kampner, 229 Conn. 465, 476, 641 A.2d 1381 (1994). The ground of lack of subject matter jurisdiction is not waivable and may be raised at any time by the parties, or by the court, sua sponte. Daley v. Hartford, 215 Conn. 14, 28, 574 A.2d 198
(1990). Thus, the Oligers' argument that Slez waived his right to contest subject matter jurisdiction because he did not raise his jurisdictional objection to the arbitrators is without merit.
"To resolve this issue, we apply the positive assurance test. `Under the positive assurance test, "judicial inquiry. . . must be strictly confined to the question whether the reluctant party did agree to arbitrate the grievance. . . . An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage."' [Emphasis in original.] John A.Errichetti Associates v. Boutin, 183 Conn. 481, 488-89,439 A.2d 416 (1981), quoting Board of Education v. Frey, 174 Conn. 578, CT Page 13237 581-82, 392 A.2d 466 (1978). `Whether a particular dispute is arbitrable is a question for the court, unless, by appropriate language, the parties have agreed to arbitrate that question, also.' Welch Group, Inc. v. Creative Drywall,Inc., 215 Conn. 464, 467, 576 A.2d 153 (1990). quoting Fragerv. Pennsylvania General ins. Co., 155 Conn. 270, 274,231 A.2d 531 (1967). . . . The manifestation of arbitrability may be by express provision to that effect or the use of broad terms;White v. Kampner, 229 Conn. 465, 472, 641 A.2d 1381 (1994); and courts must look to the plain language of the contract and construe the contract as a whole when determining the intent of the parties. Id., 473." Weitz Co. v. Shoreline Care Ltd.Partnership, 39 Conn. App. 641, 644-45, ___ A.2d ___ (1995).
Paragraph 6 of the parties' agreement to arbitrate states: "It is agreed that said fee dispute shall be heard and decided by the Legal Fee Arbitration Board of the Connecticut Bar Association in accordance with its prescribed rules." Section IV.3 of the CBA Rules provides that "[d]isputes over which a court has jurisdiction to fix the fee, or in which a fee is fixed or approved by a court or statute . . . are specifically excluded from the committee's and Board's jurisdiction." Thus, the arbitrators' subject matter jurisdiction does not include jurisdiction to hear fee disputes where a legal fee is established by the court or by statute, or where a legal fee is approved by a court.
Public Act 1986, No. 86-338, § 1 (formerly General Statutes § 52-251c, revised to 1987), enacted as part of "Tort Reform I," provided in pertinent part: "(a) In any claim or civil action, accruing on or after October 1, 1986, seeking damages as compensation for personal injury or wrongful death, the attorney for the claimant may contract for his fee to be paid contingent upon, and as a percentage of: (1) Damages awarded pursuant to a determination by the trier of fact; or (2) amounts received pursuant to a settlement agreement. . . . (b) In any such contingency fee arrangement such fee shall be the exclusive method for payment of the attorney for the claimant and shall not exceed an amount equal to a percentage of the award or settlement amount as follows: (1) Thirty-three and one-third per cent of the first three hundred thousand dollars. . . ." "The statute restricts the size of the fee that an attorney can recover from a client pursuant to a contingency fee agreement in an action to recover damages for personal injury. . . . " Berry v. Loiseau, 223 Conn. 786, CT Page 13238 829-30, 614 A.2d 414 (1992).
The "Tort Reform I" version of § 52-251c that was in effect when Slez earned his contingent fees merely established a ceiling or limit on the contingent fee percentages that Slez could have recovered from the Oligers. While the fees charged by Slez were in the nature of contingent fees on amounts received pursuant to a settlement agreement, a portion of the fees were calculated based on moneys received by the Oligers and a portion of the fees were calculated based on an annuity received by the Oligers as part of their settlement with the tortfeasor. General Statutes § 52-251c is silent with respect to valuing annuities for purposes of calculating contingency fees. Thus, the fees charged by Slez were not wholly controlled or fixed by § 52-251c because the statute does not specifically address the portion of Slez's fees that were based on the annuity. Accordingly, the contingency fees were not established by statute, and, therefore, it cannot "be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." (Emphasis in original.) John A. ErrichettiAssociates v. Boutin, supra. 183 Conn. 489. The CBA had subject matter jurisdiction to hear and decide the fee dispute between Slez and the Oligers.
 IV
In moving to vacate, Slez argues that the CBA's award was beyond the scope of the Oligers' submission. Slez contends that the Oligers' submission stated that the fees in dispute were "up to $75,000.00," and the arbitrators, in total disregard of the submission, awarded $95,000.00 to the Oligers.
In response the Oligers argue that their submission was unrestricted because the phrase "fees in dispute up to $75,000.00," as stated in their petition, does not constitute a conditional restriction. The Oligers argue that in making the $95,000.00 award, the arbitrators took into account the costs and loss of interest incurred by the Oligers. The Oligers contend that Slez cannot contest such an award because the arbitrators did not state how much of the award constituted damages, and how much of the award constituted costs or interest. Thus, the Oligers contend that Slez cannot prove that the damages portion of the award (that is, that CT Page 13239 portion of the award that constitutes the overcharge for legal fees) was excessive. The Oligers further argue that even if the submission was limited to $75,000.00, Slez placed the entire amount of the legal fees ($334,148.17) into question.
The applicable test again is the "positive assurance" test. Under General Statutes § 52-418(a)(4), an arbitral award may be vacated "if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter was not made." "Arbitration is a creature of contract; if the parties choose to set limits on the arbitrators' powers, then the parties will be bound by those limits. Connecticut Union of TelephoneWorkers v. SNET Co., 148 Conn. 192, 197, 169 A.2d 646 (1961)."Board of Education v. AFSCME, 195 Conn. 266, 269, 487 A.2d 553
(1985). "The submission . . . defines the scope of the entire arbitration proceeding by specifically delineating the issue to be decided. Naugatuck v. AFSCME, 190 Conn. 323, 326,460 A.2d 1285 (1983). In deciding whether the arbitrators have exceeded their powers, this court, as a general rule, examines only the award to determine whether it is in conformity with the submission. . . . Waterbury Construction Co. v. Board ofEducation, 189 Conn. 560, 563, 457 A.2d 310 (1983)." Board ofEducation v. AFSCME, supra, 195 Conn. 271. Thus, the trial court's review of whether the arbitrators exceeded their powers is limited to a comparison of the award with the submission. See Board of Education v. Bridgeport EducationAssn., 173 Conn. 287, 290-91, 377 A.2d 323 (1977). "In determining the amount of an award, arbitrators must stay within the scope of the submission agreement. . . ." 6 C.J.S., Arbitration, sec. 118.
"The scope of the submission . . . is determined by the intention of the parties as ascertained in accordance with the rules governing construction of contracts generally, from the submission, rather than from the award. . . ." 6 C.J.S., Arbitration, sec. 25, p. 197. A contract, of course, is to be construed as a whole and all relevant provisions will be considered together. Bialowans v. Minor, 209 Conn. 212, 217,550 A.2d 637 (1988).
While it could have been worded otherwise, the Oliger's petition, which is the submission since it is what Slez agreed to arbitrate, states: "b. What amount of legal fees charged is in dispute? $ up to $75,000". Thus, only "fees" were in CT Page 13240 dispute and only "up to $75,000." It may be said with positive and mathematical assurance that an award of $95,000 is not within the ambit of an arbitration agreement which provided that what was in dispute were "fees . . . up to $75,000." The arbitrators exceeded their powers because they rendered an award that was beyond the scope of the submission. "[I]n this day of suffocating court dockets"; Fengler v. NorthwestConnecticut Homes, Inc., 215 Conn. 286, 292, 575 A.2d 696
(1990); where voluntary arbitration is favored by the courts;John A. Errichetti Associates v. Boutin, supra, 183 Conn. 488; and is to be encouraged as an alternate form of dispute resolution; Genovese v. Gallo Wine Merchants, Inc., 226 Conn. 475,489, 628 A.2d 946 (1993); Diamond Fer. Chem. Corp. v.Comm. Trad. Intl., 211 Conn. 541, 552, 560 A.2d 419 (1989);Administrative Residual Employees Union v. State, 200 Conn. 345,349, 510 A.2d 989 (1986); where, as here, the party seeking arbitration states an amount in dispute, courts must be vigilant in vacating awards which exceed such amount, whether by a little or a lot. Were the rule otherwise, respondents would justifiably resist arbitration. So-called "high-low" arbitrations, which have gained a degree of acceptance in recent years, especially with respect to personal injury claims, would be subverted.
In the interest of judicial economy, in the event of further review, this court will address Slez's remaining claims.
 V
Slez argues that he was prejudiced by the CBA's failure to permit him to add his former partner, Kevin O'Grady, to the action for purposes of indemnification or contribution. Slez further argues that this failure constitutes misconduct on the part of the CBA and the arbitrators.[3] In response, the Oligers argue that Slez waived his right to object to the arbitration award on this ground because he failed to raise his objection to the arbitrators before they rendered their decision.
Private arbitration proceedings are not governed by the rules of civil procedure because such a proceeding is not an "action" or a proceeding in a court of justice. DaycoCorporation v. Fred T. Roberts Co., 192 Conn. 497, 502-03,472 A.2d 780 (1984).[4] Thus, the legal proceeding or "action" to which the rules of civil procedure apply arises after the CT Page 13241 arbitration, in the context of an application to the superior court to confirm or vacate the arbitration award, or as in Dayco, in the context of an action to enforce an award or judgment. Id.
Slez and O'Grady were partners at the time that the Oligers contacted and retained the Slez-O'Grady firm. Some time after this representation began, the Slez-O'Grady partnership dissolved. It is not clear whether after the dissolution, Slez, as a solo practitioner, or Slez and O'Grady, as co-counsel, represented the Oligers in their pending law suits. Slez alleges that he continued to represent the Oligers and that he entered into an arrangement with O'Grady to split the fees generated from the Oliger case. It is not known whether the agreement was oral or written, or whether the $334,418.17 of legal fees were actually divided between Slez and O'Grady. Based on the record, the court can only conclude that the Slez-O'Grady partnership was dissolved both prior to the settlement of the Oligers' claims and prior to the commencement of the CBA arbitration proceeding.
Slez also stated in a written submission filed with the arbitrators on February 28, 1994 that his former partner, O'Grady, "joined voluntarily as a co-respondent" in the arbitration proceeding. The record reflects that O'Grady did not participate in the proceeding, and that Slez did not request that the Oligers join O'Grady as a respondent to the arbitration proceeding.
The record reflects that Slez failed to formally request O'Grady's participation in the proceedings, and that Slez failed to raise an objection to the arbitrators with respect to O'Grady's absence from the proceedings. Because arbitration proceedings are not governed by the rules of civil procedure, no misconduct can be imputed to either the CBA or the arbitrators because of O'Grady's absence from the arbitration proceeding.
 VI
Slez argues that the award should be vacated because the arbitrators engaged in wrongful ex parte communications with a witness after the conclusion of the taking of testimony. Specifically, Slez alleges that the arbitrators discussed the substance of a witness's testimony with the witness on October CT Page 13242 7, 1994, after the taking of testimony had concluded. Slez further alleges that the arbitrators engaged in the ex parte communication without his knowledge or consent. In response, the Oligers argue that Slez fails to demonstrate that the communication was material to the panel's decision, or that the communication affected the outcome of the arbitration proceeding.
General Statutes § 52-418 (a)(2) provides that an arbitration award may be vacated "if there has been evident partiality or corruption on the part of any arbitrator. . . ." "The burden rests on the party attacking the award to produce sufficient evidence to invalidate it. . . . Absent a showing of `perverse misconstruction or positive misconduct' . . . the determination of the arbitrator is not subject to judicial inquiry. . . ." Schwarzchild v. Martin, 191 Conn. 316, 327,464 A.2d 774 (1983); see also Vincent Builders, Inc. v.American Application Systems, Inc., 16 Conn. App. 486, 495,547 A.2d 1381 (1988).[5]
To be improper, "the ex parte communications must involve facts, issues or evidence relevant to the subject of the arbitration proceedings." Id., 496. It has also been held that it is improper for arbitrators to undertake an investigation into a material matter after the close of the hearing and without notice to the parties. O G/O'ConnellJoint Venture v. Chase Family Limited Partnership, supra,203 Conn. 146-47. When the integrity of the arbitration process "is tainted either by actual impropriety or the appearance of impropriety, the arbitration award cannot be permitted to stand." Id., 148.
At the hearing before this court in conjunction with the plaintiff's application to vacate the arbitrators' award, Robert Goldberger, the chairman of the panel, testified that on October 7, 1994, the arbitrators had a discussion with one of the witnesses with respect to the structure of the annuity arranged by Slez with the tortfeasor's insurer on behalf of the Oligers. Goldberger testified that the conversation "had nothing to do with the testimony. . . . [w]e were asking how certain things worked."
The communications concerning the structure or valuation of the annuity were directly relevant to the subject of the arbitration proceeding, as the structure and valuation of the CT Page 13243 annuity logically affected the fees that Slez could charge the Oligers. Furthermore, the arbitrators, in speaking with the witness, inquired into material matters after the close of the hearing and without notice to the parties. This ex parte communication with a witness constituted improper conduct by the arbitrators.
The application to vacate the arbitration award is granted.
BY THE COURT
Bruce L. LevinJudge of the Superior Court