STATE OF CONNECTICUT *v.* PAUL B. WOHLER
(11030)

FOTI, LAVERY and LANDAU, Js.

Argued December 14, 1992—decision released March 9, 1993

*Arthur P. Meisler,* for the appellant (defendant).

*Leah Hawley,* assistant state's attorney, with whom, on the brief, were *Mark Solak,* state's attorney, and *Mark Stabile,* assistant state's attorney, for the appellee (state).

FOTI, J. The defendant appeals from the judgment of conviction,[1] rendered after a trial to the court, of the crime of larceny in the fifth degree by theft of services in violation of General Statutes §§ 53a-125a (a)[2] and 53a-119 (7) (F).[3] The defendant claims that the trial

---

[1] The defendant was charged in a separate information with two counts of larceny in the second degree and one count of conspiracy. The defendant's motion for judgment of acquittal was granted as to one count of larceny in the second degree and conspiracy after the state had rested, and he was found not guilty of the remaining count upon the completion of all the evidence.

[2] General Statutes § 53a-125a (a) provides: "A person is guilty of larceny in the fifth degree when he commits larceny as defined in section 53a-119 and the value of the property or service exceeds two hundred fifty dollars."

We note that the charging document incorrectly listed this as § 53a-125 (a), which is larceny in the fourth degree, rather than § 53a-125a (a).

[3] General Statutes § 53a-119 provides in pertinent part: "A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner. Larceny includes, but is not limited to . . .

"(7) Theft of services. A person is guilty of theft of services when . . . (F) obtaining or having control over labor in the employ or another per-

court improperly determined that the evidence was sufficient to prove him guilty beyond a reasonable doubt of the crime charged.

The trial court reasonably could have found the following facts. In October, 1990, the defendant was employed as the assistant superintendent of the Willimantic water works, Windham water department (water department). His position required him to supervise other employees who maintained the water distribution system, and he was authorized to allow overtime pay. He was also in charge of water department equipment used on the jobs he supervised.

In early October, 1990, Dominic Shirghio, a water department customer, contacted the defendant at the water department to discuss upgrading the water lines to his house at 76/82 South Street, Willimantic. The defendant informed Shirghio that the water department would excavate the street and install a new line from the water main into the curb, but that the homeowner had to hire a private contractor to install the new line from the curb to the residence.

Although the water department was responsible for the distribution system in the street from the main to the shutoff at the curb, and the customer was responsible for the line from the curb to the residence, the water department, at the time, had "adopted" a different policy to encourage customers to replace their lead pipes with copper pipes. It had allowed its employees, at no cost to customers, to attempt to "pull" new ser-

son, or of business, commercial or industrial equipment or facilities of another person, knowing that he is not entitled to the use thereof, and with intent to derive a commercial or other substantial benefit for himself or a third person, he uses or diverts to the use of himself or a third person such labor, equipment or facilities."

vices for the homeowner.[4] If the water company could pull the new pipe in one try, it would do so without charge. If the one pull was unsuccessful, the contractor would have to dig a trench and lay the pipe at the homeowner's expense. Water department employees often removed sidewalk sections and dug up the homeowner's property in relaying water services, with the water department's knowledge and permission, also at no cost to the homeowner.

The defendant gave Shirghio the names of certain private contractors, including Derek Dimmock, a water department employee with whom the defendant had an agreement. The defendant and Dimmock worked together on their own time replacing customers' water services to earn extra income. Shirghio contacted Dimmock and received two estimates to upgrade his service, $450 if the water department was able to pull the new pipe, and $1200 if Dimmock had to dig a trench for the pipe. The rental cost for the backhoe, if digging was necessary, would be $350. Dimmock was hired and shortly thereafter dropped off material at the work site.

On the following day, water department employees unsuccessfully attempted to pull the cable through for Shirghio. The defendant then told the foreman to dig up the sidewalk. When that was done, two or three additional attempts to pull the cable through were unsuccessful. The defendant then directed the foreman to dig farther onto the property. The distance between the sidewalk and the house was approximately twenty feet. After digging three to four feet beyond the sidewalk onto Shirghio's property, the crew successfully pulled the cable.

---

[4] The free pull was accomplished by placing a cable through the old lead pipe, attaching it to the customer's new copper pipe, and attempting to pull it with a backhoe.

The defendant arrived at the scene after the other employees and remained there for approximately one and one-half hours before the successful pull. He then left and returned later that day to complete the inside work. It was not unusual for water department employees to dig three feet onto a customer's property to reach the copper pipe in order to connect it to the curb. None of the work performed by the water department employees at Shirghio's house was unusual or different from work done at other sites for homeowners and private contractors. The defendant received no money from Shirghio for work done by the water department employees. He did receive his normal pay.

The court found the defendant guilty of larceny in the fifth degree by theft of services in that he diverted the use of water department labor and equipment to benefit Shirghio by saving him the difference between the $1200 he would have had to pay for excavation and the $450 hookup fee that he paid.

Appellate analysis of a claim of insufficiency of the evidence is a twofold task. First, "[w]e . . . review the evidence presented at the trial, construing it in the light most favorable to sustaining the verdict." (Internal quotation marks omitted.) *State* v. *Carpenter,* 214 Conn. 77, 88, 570 A.2d 203 (1990) (*Covello, J.,* dissenting). Second, we must determine whether, on the basis of the facts so established and the inferences reasonably drawn therefrom, the court reasonably could have concluded that the cumulative effect of the evidence established guilt beyond a reasonable doubt. Id. In applying this standard to the present case, we conclude that the evidence was insufficient to establish proof beyond a reasonable doubt of the crime as charged, even viewing that evidence in a light most favorable to sustaining the trial court's findings.

The state filed, pursuant to the defendant's request, a statement of essential facts alleging: "Count Five. On or about October 12, 1990, the defendant PAUL B. WOHLER, Assistant Superintendent of the Windham Water Department, while having control over the labor, equipment and facilities of the town of Windham Water Department, knowing that he was not entitled to the use of same, and with intent to derive a benefit to himself and another, did use or divert the use of said labor, equipment and facilities in order to install a water line hookup into 76/82 South Street in Willimantic, Connecticut and received monetary gain for himself and another, with the value of said gain between $250 and $500."

The statement of essential facts delineates the precise contours of the charge against the defendant. See *State* v. *Hahn*, 207 Conn. 555, 559, 541 A.2d 499 (1988). In it, the state alleged that the defendant, by his actions, "received monetary gain for himself *and* another." (Emphasis added.) The alleged gain of "between $250 and $500" was to the defendant *and* another. The state chose to make its factual allegations in the conjunctive rather than the disjunctive, as in the statute, which speaks of "substantial benefit for himself *or* a third party." (Emphasis added.) The state is limited to proving that the defendant has committed the offense in substantially the manner it described. Id., 561. The record, however, is abundantly clear that the defendant himself derived no benefit or gain from the actions involved here. Nor did the court find any such benefit.[5]

The defendant might have benefited had the crew been unable to pull the cable, since he and Dimmock

[5] The parties appear to agree that the only person who may have benefited from the defendant's actions was Dominic Shirghio, the homeowner and customer of the water company.

would have received $1200 rather than $450 for installing the system. In any event, the requisite intent claimed by the state was the intent "to derive a benefit to himself and another." Intent may be, and usually is, inferred from conduct. *State* v. *Jones,* 215 Conn. 173, 182, 575 A.2d 216 (1990). Intent is a question of fact for the trier, and the conclusion drawn by the trier should not be reversed unless it is unreasonable. *State* v. *Holley,* 174 Conn. 22, 26, 381 A.2d 539 (1977). We conclude that the evidence presented was not sufficient to permit the court, as trier, reasonably to infer from the facts found that the defendant possessed the requisite intent.[6]

The judgment is reversed and the case is remanded with direction to render judgment of acquittal.

In this opinion LAVERY, J., concurred.

LANDAU, J., dissenting. I respectfully dissent from the majority. Absent compliance by the trial court with Practice Book § 4059, the appellate tribunal cannot ascertain the reasoning and findings on which the decision is based. The utilization of a sufficiency analysis by the majority is the very antithesis of its lack of a factual foundation on which to base its conclusion.

Scrutiny of the procedural posture of this appeal is necessary for its proper resolution. Following a bench trial, the court ruled orally on the various counts charged by the state. The court found the defendant guilty of theft of services in violation of General Statutes §§ 53a-125a (a) and 53-119 (7) (F). The decision

---

[6] The water department apparently had no written guidelines for assisting contractors and homeowners, nor did it have a clear policy as to its employees' responsibility regarding what work should be done to benefit customers. At the time the defendant engaged in the activity in question here, the water department also apparently did not prohibit its employees from taking jobs, on their own time, that might conflict with their full-time duties.

was recorded by a court monitor. On appeal, however, the trial court did not order the decision transcribed, nor was the decision signed by the trial judge as mandated by Practice Book § 4059. I believe that the trial court's failure to adhere to this section without emendation by the defendant prevents this court from properly addressing the defendant's claims.

Practice Book § 4059 provides in pertinent part that "when rendering judgments . . . in criminal cases . . . the court shall, either orally or in writing, state its decision on the issues in the case and, if there are factual issues, the factual basis of its decision. The court shall include in its decision its conclusion as to each claim of law raised by the parties. If oral, the decision shall be recorded by a court reporter and, if there is an appeal, the trial judge shall order the decision transcribed and the transcript of the decision shall be signed by the trial judge and filed in the trial court within ten days of the filing of the appeal. . . ." These actions are necessary so that a reviewing court, and the parties, know the precise decision of the trial court, as well as the basis of its decision. These requirements, analogous to the memorandum requirement when a decision is written, prevent the confusion that might arise if findings in the record conflict with a trial court's decision. See *Devitt* v. *Manulik,* 176 Conn. 657, 659 n.1, 410 A.2d 465 (1979); 1 W. Moller & W. Horton, Connecticut Practice § 138. Further, it is incumbent upon an appellant, when preparing the record for appeal, to take whatever steps are necessary to ensure that the trial court complies with § 4059. *McLaughlin* v. *Bronson,* 206 Conn. 267, 277–78, 537 A.2d 1004 (1988).

I do agree with the majority that the state, having filed, pursuant to the defendant's request, a statement of essential facts stating factual allegations in the conjunctive rather than the disjunctive, must then prove that the defendant committed the offense in substan-

tially the manner described. The majority then concluded "that the evidence presented was not sufficient to permit the court, as trier [of the facts], reasonably to infer from the facts found that the defendant possessed the requisite intent [to do both]."

A careful reading of the transcript, however, reveals conflicting and inconsistent findings on the issue of the defendant's intent. The trial court made "findings" that the defendant had the "intent to [derive] the commercial substantial benefit—to derive a substantial or commercial benefit to himself or to a third person"; that "[the court does not] think when they—[the defendant] and Mr. Dimmock started out . . . they were going to use this as a means to embezzle money or goods or services . . . I don't think that was their intent, they were going to make some money on the side. But, I have to say that I think there was a lot of impropriety that *may not be illegal,* but it did take place here"; (emphasis added); and "you weren't trying to make an illegal buck, but I think it worked out that way in the end."

Practice Book § 4059 endeavors to prevent exactly what occurred in this case. The trial court found the defendant guilty of theft of services and then made other findings on the record that conflicted directly with these earlier findings.

Because of the conflicting findings made by the court regarding the intent of the defendant, I believe that review is effectively impossible. Further, because the defendant has failed to meet these requirements, I maintain that the majority cannot review the merits of this appeal based on a sufficiency analysis.[1] "Either

---

[1] To fulfill the requirements of this section in this case, the defendant's first step would have been to file a motion with the trial court pursuant to Practice Book § 4051. In the event that the trial court refused to articulate its findings, the defendant could then have filed a motion with this court

we adhere to the rules or we do not adhere to them.'' *Osborne* v. *Osborne,* 2 Conn. App. 635, 639, 482 A.2d 77 (1984). By positing this, I do not seek to place form over substance. This being a sufficiency claim, however, the very essence of the question is framed by parameters set in the trial court's findings. For us to require any less diminishes the effectiveness of judicial review.

Therefore, I would dismiss the appeal.

pursuant to Practice Book § 4183, which provides that this court "may . . . on its own motion or upon motion of any party, (1) order a judge to take any action necessary to complete the trial court record for the proper presentation of the appeal . . . ."