GEORGE M. CAPOZZI *v.* LIBERTY MUTUAL FIRE INSURANCE COMPANY
(11477)

FOTI, LANDAU and SCHALLER, Js.

Argued February 16—decision released August 3, 1993

*William I. Garfinkel,* with whom, on the brief, was *Garrett M. Moore,* for the appellant (plaintiff).

*James E. Kernan,* for the appellee (defendant).

FOTI, J. The plaintiff appeals from the decision of the trial court confirming an arbitration award in favor of the defendant. The plaintiff claims that the court improperly (1) concluded that he had waived the issue of untimeliness and (2) affirmed the arbitrators' finding that he was not operating a replacement vehicle when he was injured. We affirm the judgment of the trial court.

The pertinent facts are as follows. On June 10, 1988, the plaintiff was injured in an accident with an uninsured motorist. At the time, he had two separate policies of insurance with the defendant. One policy insured a 1980 Honda automobile; the other was purchased to insure a 1985 Honda motorcycle. Each policy excluded uninsured motorist coverage for injuries sustained in an uninsured vehicle that is owned by the injured party. At the time of the accident, the plaintiff was driving a 1986 Suzuki motorcycle. Whether the Suzuki was uninsured for the purposes of the uninsured motorist exclusion is determined by the policy provisions that defined the insured vehicle to include "any miscellaneous type vehicle of the same type shown in this Schedule or Declarations." The provision stated that it would apply to another vehicle "only if: a. you acquire a vehicle during the policy period; b. you ask us to insure it within 30 days after you become the owner; and c. With respect to a pickup or van, no other insurance policy provides coverage for that vehicle. If the vehicle you acquire replaces one of the same type shown in the Schedule or in the Declarations, it will have the same coverage as the vehicle it replaced. . . ."

The plaintiff purchased the Suzuki motorcycle on May 2, 1988, and took possession of it on June 4, 1988. He continued to operate the Honda motorcycle sporadically after May 2, 1988, and before the accident of June 10, 1988. On September 8, 1988, the plaintiff informed the defendant that he had acquired the Suzuki. At no time before the accident did the plaintiff notify the defendant that he had acquired the Suzuki or that he was removing the Honda motorcycle from service. Following the accident, the plaintiff brought a claim for uninsured motorist benefits under his two policies of insurance with the defendant. The parties submitted the coverage issue to compulsory arbitration before a three person panel. By a two to one vote, the

arbitrators found the issue for the defendant.[1] The plaintiff then appealed to the Superior Court, which confirmed the majority arbitrators' decision.

I

The plaintiff first claims that the arbitrators' award must be vacated because it was not rendered within the time period allowed by General Statutes § 52-416,[2] and the plaintiff had not agreed to the delay and had filed a timely motion to vacate the award.[3] The following facts are necessary to resolve this issue.

The parties agreed to a bifurcated arbitration procedure by which the arbitrators would first decide the coverage issues and, if necessary, consider other issues at a later date. They asked the chairman of the arbitration panel to establish a briefing schedule, and requested a forty-five day period for initial simultaneous briefs and another fifteen days for reply briefs. The chairman of the panel thereafter set August 12, 1991, for submission of briefs, and August 28, 1991, for reply briefs. He further scheduled September 11, 1991, as the date of the arbitrators' meeting, and notified both

---

[1] An effective award may be rendered by a majority of the arbitrators. General Statutes § 52-414 (a).

[2] General Statutes § 52-416 provides: "(a) If the time within which an award is rendered has not been fixed in the arbitration agreement, the arbitrator or arbitrators or umpire shall render the award within thirty days from the date the hearing or hearings are completed, or, if the parties are to submit additional material after the hearing or hearings, thirty days from the date fixed by the arbitrator or arbitrators or umpire for the receipt of the material. An award made after that time shall have no legal effect unless the parties expressly extend the time in which the award may be made or by an extension or ratification in writing.

"(b) The award shall be in writing and signed by the arbitrator or arbitrators, or a majority of them, or by the umpire. Written notice of the award shall be given to each party."

[3] The plaintiff presents this timeliness issue as an alternative to his main argument. We address it first because it is a challenge to the arbitrators' authority to render an award.

parties and the other panel members of the time and place. On July 3, 1991, the parties notified the chairman that they had agreed to a later date for the submission of their reply briefs, that date being September 6, 1991.

On September 6, 1991, the panel chairman notified the other panel members that the meeting scheduled for September 11, 1991, had to be cancelled because of conflicting trial schedules of two arbitrators; a revised meeting date of October 7, 1991, was suggested. Both parties were sent copies of the chairman's September 6 letter. On September 10, 1991, one of the arbitrators advised the panel that he was unavailable on October 7; he suggested a meeting for one of the following two Mondays. Both parties received copies of this correspondence, as well.

On November 18, 1991, the arbitrators met and reviewed evidence consisting of the two insurance policies and the plaintiff's deposition. They also considered the briefs submitted by the parties. A majority opinion, dated November 18, 1991, was sent to the parties on or about November 27, 1991. The dissent carries the date of December 6, 1991.

The plaintiff claims that the statutory deadline of thirty days, mandated by General Statutes § 52-416, ran from the date set for submission of the parties' reply briefs.[4] He argues that the arbitrators did not render the award for more than two months after receiving the reply briefs. The defendant argues alternatively that (1) the award was timely rendered because the hearing took place on November 18, 1991, (2) the plaintiff failed to file his application to vacate the award on

---

[4] While the parties had agreed to a revised date of September 6, 1991, for submission of reply briefs, the plaintiff actually submitted his brief on August 28, 1991, and the defendant submitted its brief on September 2, 1991.

this basis[5] within thirty days of the notice as required by General Statutes § 52-420,[6] and (3) the plaintiff, by his conduct, waived the requirements of General Statutes § 52-416. The trial court concluded that the plaintiff had waived any right to object to the untimeliness of the award. We agree.

General Statutes § 52-416 requires that the rendering of an arbitration award and notification of the award both be given within the thirty day period from the date the hearing or hearings are completed. *Hayes* v. *Travelers Indemnity Co.,* 26 Conn. App. 418, 421, 601 A.2d 555 (1992). In *Hayes,* there was "no indication that the parties waived the thirty day . . . period." Id., 423. Here, on the other hand, the trial court found that there was such an indication. The trial court found that when the parties extended the time for filing their reply briefs with the arbitrators, they also extended the thirty day period for rendering a decision to October 7, 1991. Thereafter, the parties knew, through receipt of copies of various communications, that the arbitrators would not be meeting until an undetermined date after October 7, 1991.

Both parties clearly knew, through counsel, that the arbitrators were attempting to choose a meeting time and date acceptable to all three of them, that the arbitrators had not met within thirty days of the submission of the reply briefs and that, at the time of the last correspondence, the thirty days, if counted from the date the reply briefs were due, had already transpired. During this period, the plaintiff raised no objec-

---

[5] The plaintiff first raised his untimeliness claim in a reply brief he filed with the trial court on February 18, 1992, approximately three months after the arbitrators' award. The court agreed with the defendant that this issue was not timely raised pursuant to General Statutes § 52-420.

[6] General Statutes § 52-420 provides: "(b) No motion to vacate, modify or correct an award may be made after thirty days from the notice of the award to the party to the arbitration who makes the motion."

tion on the basis of timeliness. Instead, he waited to determine whether the decision was favorable before raising such an objection. Our Supreme Court has "made it clear that we will not permit parties to anticipate a favorable decision, reserving a right to impeach it or set it aside if it happens to be against them, for a cause which was well known to them before or during the trial." *Krattenstein* v. *G. Fox & Co.,* 155 Conn. 609, 616, 236 A.2d 466 (1967). This same principle has been applied in the arbitration context, where the court has held that a plaintiff's failure to raise the issue of timeliness prior to the issuance of an arbitration award operates as a waiver of the right to assert the award's lack of timeliness. *AFSCME* v. *New Britain,* 206 Conn. 465, 468, 538 A.2d 1022 (1988). In *Diamond Fertiliser & Chemical Corporation* v. *Commodities Trading International Corporation,* 211 Conn. 541, 554, 560 A.2d 419 (1989), the court rejected the plaintiff's belated objection to the timeliness of an award, stating adamantly that it would not reward such conduct where the plaintiff attempted "to manipulate the arbitration process by reserving objection until after the announcement of the arbitral award. . . ."[7]

In this case, neither party objected to the arbitrators' delayed meetings; the parties manifested an agreement that the award would be delayed. "The party challenging an arbitration award . . . bears the burden of demonstrating that the award violates the parties'

---

[7] The court noted that "proceeding with arbitration without objection after knowledge the arbitrators will not render the award within the time provided constitutes a waiver of any objection pursuant to . . . AAA rules. . . . The American Arbitration Association, Commercial Arbitration Rules § 38 provides: 'WAIVER OF RULES. Any party who proceeds with the arbitration after knowledge that any provision or requirement of these rules has not been complied with and who fails to state objection thereto in writing, shall be deemed to have waived the right to object.' " *Diamond Fertiliser & Chemical Corporation* v. *Commodities Trading International Corporation,* 211 Conn. 541, 553 n.8, 560 A.2d 419 (1989).

agreement." *Hartford* v. *IAFF, Local 760, AFL-CIO, CLC*, 24 Conn. App. 254, 257, 587 A.2d 435 (1991). Waiver is a question of fact; *New York Annual Conference* v. *Fisher*, 182 Conn. 272, 300, 438 A.2d 62 (1980); and we will not disturb the trial court's factual findings unless they are clearly erroneous. *Naftzger* v. *Naftzger & Kuhe, Inc.*, 26 Conn. App. 521, 526, 602 A.2d 606 (1992).

Because the trial court properly found that the parties had waived any right to object to the untimeliness of the award, we need not address the defendant's alternative arguments.

## II

The plaintiff next claims that the trial court improperly affirmed the arbitrators' conclusion that at the time of the accident the plaintiff was not operating a "replacement vehicle" and therefore was not covered by the uninsured motorist provisions of the policies issued by the defendant.

The trial court properly concluded that the determination of whether the plaintiff was operating a replacement vehicle as defined by the provisions of an automobile insurance policy involves more than factual issues; it also involves a question of law requiring the interpretation of provisions of the policy. The court therefore properly conducted a de novo review. *Chmielewski* v. *Aetna Casualty & Surety Co.*, 218 Conn. 646, 667, 591 A.2d 101 (1991); *Middlesex Ins. Co.* v. *Quinn*, 27 Conn. App. 573, 576, 609 A.2d 1008 (1992), aff'd, 225 Conn. 257, 622 A.2d 572 (1993). After examining cases from other jurisdictions, the trial court identified two approaches to the definition of replacement vehicle. The first, the "formalistic" approach, requires that the vehicle described in the policy be disposed of or otherwise rendered inoperable at the time of the replacement. The second, "alternative" approach, looks

to the insured's intent and conduct in the totality of the circumstances to determine if the newly acquired vehicle is a replacement vehicle. The trial court assumed that this alternative approach prevails in Connecticut.[8] The court then concluded that even under this more liberal approach, the plaintiff was properly denied coverage because the arbitrators' factual findings were supported by substantial evidence.

Under the alternative approach adopted by the trial court, the insured's intent is an important factor in determining whether a newly acquired vehicle is a replacement vehicle. Under the facts of this case, intent must be determined as of June 4, 1988, the date the plaintiff took possession of the Suzuki motorcycle, not May 2, 1988, the date he purchased the vehicle.

The issue to be determined is whether the trial court properly concluded that there was substantial evidence supporting the arbitrators' finding that it was not the plaintiff's intent as of June 4, 1988, that the Suzuki, rather than the Honda motorcycle, should be the insured vehicle. "The substantial evidence test in the context of arbitration requires that a court determine whether substantial evidence exists in the 'record to support the arbitration panel's findings of basic fact and whether the conclusions drawn from these facts are reasonable. . . . Substantial evidence will be found to exist if the . . . record supplies a substantial basis of fact from which the court reasonably can infer the fact in issue.' " *Lawrence* v. *New Hampshire Ins. Co.*, 29 Conn. App. 484, 490, 616 A.2d 806, cert. denied, 224 Conn. 923, 618 A.2d 528 (1992).

---

[8] The trial court relied on cases of our Supreme Court generally indicating that ambiguous conditions and provisions in an insurance policy should be afforded a liberal construction in favor of the insured. See, e.g., *McGlinchey* v. *Aetna Casualty & Surety Co.*, 224 Conn. 133, 617 A.2d 445 (1992); *Middlesex Ins. Co.* v. *Quinn*, 27 Conn. App. 573, 609 A.2d 1008 (1992), aff'd, 225 Conn. 238, 622 A.2d 555 (1993). The court also relied on its conclusion that, under the facts, "the plaintiff could not recover under the 'formalistic approach.' "

"In its common usage, the term 'replaced' includes 'substituted.' See Webster's Third New International Dictionary . . . ." (Citations omitted.) *S & S Tobacco & Candy Co.* v. *Greater New York Mutual Ins. Co.*, 224 Conn. 313, 319, 617 A.2d 1388 (1992). If the Suzuki did not "replace" the Honda motorcycle, then it was not covered for insurance purposes unless the plaintiff requested coverage within thirty days of becoming the owner. There is no claim that the plaintiff made such a request before his accident.

The record supports the arbitrators' finding that the plaintiff did not intend to substitute the Suzuki for the Honda motorcycle. The deposition testimony of the plaintiff as to his use of the Honda was conflicting; he stated both that he *rode* the Honda throughout May and June of 1988 and that the vehicle was inoperable on the street.[9] The arbitrators obviously resolved this factual conflict by determining that the plaintiff drove the Honda sporadically after May 2, 1988, and before the accident. From this, they inferred "that it was not the [plaintiff's] intent, as of May 2, 1988, that the Suzuki, rather than the motorcycle he continued to drive, should be the insured vehicle."

Although the arbitrators determined the plaintiff's intent "as of May 2, 1988," we do not view this finding as limited to that day alone. May 2, 1988, is merely the starting point. The determination is that at no time,

---

[9] At his deposition, the plaintiff was asked by the defendant's counsel, "[D]id you drive [the Honda] throughout May and June 1988?" He stated, "Very sporadically. It wasn't running—barely running, I should say." When asked, "[D]id you drive it up until the time you sold it [in 1989]," he stated that he "stopped riding it shortly after the accident. . . ."

Later, when asked by his attorney whether, on June 10, 1988, the Honda was still running and if he was "able to use it on the street," the plaintiff stated, "No, no. When I say running, it would start. . . ."

The plaintiff also stated that between the time he took possession of the Suzuki on June 4 and the day of his accident on June 10, he did not ride the Suzuki.

from May 2, 1988, the date the plaintiff purchased the Suzuki, through June 10, 1988, the date of the accident, did he intend to replace the Honda with the Suzuki. Because June 4, 1988, the date of possession of the Suzuki, falls within that time frame, any error resulting from the arbitrators' use of the term "as of May 2, 1988" is harmless. The plaintiff's sporadic use of the Honda motorcycle throughout May and June permits the conclusion that he did not intend to "replace" the Honda with the Suzuki, even after coming into possession of the Suzuki.

Intent is a question of fact for the trier. *State* v. *Wohler,* 30 Conn. App. 571, 577, 621 A.2d 751 (1992). We will not reverse the trier's determination of intent unless the trier could not reasonably have arrived at the conclusion that it reached. *Hanson Development Co.* v. *East Great Plains Shopping Center, Inc.,* 195 Conn. 60, 65, 485 A.2d 1296 (1985).

"Intention is a mental process, and of necessity it must be proved by the statements or actions of the person whose act is being scrutinized. . . . A person's intention is to be inferred from his conduct." (Citations omitted.) *State* v. *Patterson,* 213 Conn. 708, 721, 570 A.2d 174 (1990). The plaintiff argues that he did not intend to continue operating the Honda motorcycle. There was, however, substantial evidence, from which reasonable inferences could be drawn, that permitted the arbitrators to reach a contrary conclusion as to the plaintiff's intent.

The arbitrators, as fact finders, have the right to believe or disbelieve the evidence presented in whole or in part. See *Connecticut Building Wrecking Co.* v. *Carothers,* 218 Conn. 580, 593, 590 A.2d 447 (1991); *Connecticut Light & Power Co.* v. *Department of Public Utility Control,* 216 Conn. 627, 640, 583 A.2d 906 (1990). On the basis of the evidence presented, the

arbitrators reasonably concluded that it was not the plaintiff's intent to replace[10] the Honda with the Suzuki motorcycle. The trial court therefore properly confirmed the arbitration award in favor of the defendant.

The judgment is affirmed.

In this opinion, LANDAU, J., concurred.

SCHALLER, J., dissenting. I respectfully disagree with the result reached in part II of the majority opinion. There, the majority concludes that "the arbitrators reasonably concluded that it was not the plaintiff's intent to replace the Honda with the Suzuki motorcycle." On that basis, the majority affirms the decision of the trial court which, itself, confirmed the decision of the two majority arbitrators on the ground that there was substantial evidence to support their finding concerning the plaintiff's intent.

I agree with the majority that the issue in this case is whether the trial court properly concluded that substantial evidence supported the arbitrators' finding that the plaintiff did not intend to replace the Honda with the Suzuki. It is important to note, however, that the arbitrators' finding of intent is focused on the May 2, 1988 date at which time the plaintiff had not yet taken possession of the Suzuki.

While I believe that the majority has applied the correct standard in determining this issue, I strongly disagree that the record supports the arbitrators' finding regardless of whether the May 2, 1988 date or the correct June 4, 1988 date is used as the fulcrum for the determination. To the contrary, I believe the record

---

[10] Although the arbitrators did not define the term "replace," the trial court determined that under neither the "alternative" nor the more liberal "formalistic" approach could the plaintiff prevail, in view of the arbitrators' factual findings. A remand for the purpose of determining which approach the arbitrators used to define "replace" is therefore unnecessary.

thoroughly supports the plaintiff's position that he intended the Suzuki to be a replacement vehicle within the language of the insurance policy at issue.

## I

It is well settled that "[b]ecause it is the insurance company that has drafted the terms of the insurance policy, any ambiguity contained therein is traditionally construed against the insurer and in favor of insurance coverage." *S & S Tobacco & Candy Co.* v. *Greater New York Mutual Ins. Co.,* 224 Conn. 313, 320, 617 A.2d 1388 (1992); *Kelly* v. *Figueiredo,* 223 Conn. 31, 36–37, 610 A.2d 1296 (1992); *Streitweiser* v. *Middlesex Mutual Assurance Co.,* 219 Conn. 371, 375, 593 A.2d 498 (1991); *Beach* v. *Middlesex Mutual Assurance Co.,* 205 Conn. 246, 250, 532 A.2d 1297 (1987).

In the present case, it is critical to note that the insurance policy, which was prepared by the defendant, failed to provide *any* definition of what constitutes a replacement vehicle under the policy. While the policy language discusses generally the replacement of an insured vehicle, there is no specification of the duties and responsibilities of the insured concerning that event. Most certainly, there is no requirement in the policy that the originally insured vehicle must be disposed of or inoperable after a replacement vehicle is acquired by the insured.

## II

An additional issue in this case is whether Connecticut recognizes the "formalistic" or "alternative" approach in defining "replacement vehicle." In its memorandum of decision, the trial court examined case law from other jurisdictions in discussing the two existing approaches to the definition of replacement vehicle. That was necessary because neither this court nor our Supreme Court has adopted any test concerning

that subject. The trial court assumed that the "alternative approach" applied and determined that, even under this more liberal approach, the plaintiff's case fails. The majority, while declining to adopt either approach, makes a similar assumption for purposes of this case.

I believe it is appropriate for this court to adopt expressly the more liberal, flexible "alternative approach" in determining whether a vehicle has been replaced. Numerous jurisdictions have adopted this approach as it clearly represents the fairest approach to this problem. See, e.g., *Government Employees Ins. Co.* v. *Berry,* 724 F. Sup. 872, 876 (D. Ala. 1989); *Continental Ins. Co* v. *Entrikin,* 9 Kan. App. 2d 384, 680 P.2d 913 (1984); *Adams* v. *Covenant Security Ins. Co.,* 465 S.W.2d 32 (Mo. App. 1971); *Filaseta* v. *Pennsylvania Threshermen & Farmers' Mutual Casualty Ins. Co.,* 209 Pa. Super. 322, 228 A.2d 18 (1967); *Rowland* v. *State Farm Mutual Automobile Ins. Co.,* 9 Wash. App. 460, 512 P.2d 1129 (1973). The alternative approach is based on an examination of the totality of the circumstances to ascertain the intent of the insured. See, e.g., *Government Employees Ins. Co.* v. *Berry,* supra; *Rowland* v. *State Farm Mutual Automobile Ins. Co.,* supra. By focusing on whether the insured intended a replacement, the alternative test operates to yield a fair interpretation of "replacement."

From a policy standpoint, the formalistic approach serves the benefit of avoiding difficult ad hoc determinations regarding the intent of the insured. See *Kelly* v. *State Farm Mutual Automobile Ins. Co.,* 256 F. Sup. 978, 981 (E.D. Tenn. 1966). The doctrine's reliance on a limited number of formal criteria, however, may engender an inaccurate result. It seems clear, for example, that an insured should be able to prove that a replacement has occurred without first establishing that

the vehicle is either inoperable or out of the insured's possession as the formalistic approach would demand.

By contrast, the alternative approach, "is applied to the replacement clause to reach a usual and ordinary meaning of the word 'replace'—that is to provide or produce a substitute or equivalent in place of a person or thing." *Government Employees Ins. Co. v. Berry,* supra. The flexible, intent-based *Berry* approach is premised on two traditional insurance doctrines. The first is that "courts should give the words in a contract the meaning they have in common, everyday usage— that is, the meaning probably held by the layperson who bought and paid for the policy." Id., citing *Rowland v. State Farm Mutual Automobile Ins. Co.,* supra. The second is that "where some doubt exists as to the proper construction of an insurance policy term, courts should resolve the doubt by interpreting the term favorably to the insured." *Government Employees Ins. Co. v. Berry,* supra, citing *Iowa National Mutual Ins. Co. v. McGhee,* 292 F. Sup. 176, 181 (W.D.Va. 1968), aff'd, 408 F.2d 4 (4th Cir. 1969); see also *S & S Tobacco & Candy Co. v. Greater New York Mutual Ins. Co.,* supra.

The purpose of the intent-based theory is to provide a flexible, common sense approach to determining the insured's intent as to replacement under the circumstances of the particular case. Accordingly, in this case, where the language of the policy is ambiguous with respect to the meaning of "replace," the approach most likely to be fair and accurate is to ascertain from the totality of the circumstances whether the insured intended to replace the insured vehicle.

In the present case, as both the trial court and the majority indicated, the plaintiff's intent must be determined as of June 4, 1988, the date when the plaintiff actually took possession of the Suzuki, rather than

May 2, 1988, when he purchased it, since it is undisputed that the Suzuki was in a repair shop until June 4, 1988.

The only direct evidence of intent presented to the arbitrators was the insured's own testimony that he intended to replace the Honda. The only other evidence relating to intent was circumstantial in nature and consisted of the insured's testimony to the effect that he had driven the Honda after the *purchase* of the Suzuki and *before* the accident. On the basis of that testimony, the majority arbitrators found that "[t]he claimant admits that he drove the Honda at various times, although sporadically, after May 2, 1988 and before the accident." They further determined, on that basis, that "it was not the claimant's intent, as of May 2, 1988, that the Suzuki, rather than the motorcycle he continued to drive, should be the insured vehicle."

The arbitrators, of course, in focusing on the May 2 date, failed to address the crucial June 4, 1988, to June 10, 1988 period. The testimony of the plaintiff on which that determination of the arbitrators was based did not indicate how often or under what circumstances the Honda was operated. More important is the absence of evidence that the Honda was operated after June 4, the date when the plaintiff took *possession* of the Suzuki, and before June 10, the date on which the accident occurred. Since the majority arbitrators erroneously used the May 2 date, rather than the June 4 date, as the starting point for the Suzuki use by the plaintiff, no reasonable inference can be drawn that the Honda was used during the period from June 4 to June 10. The majority arbitrators thus improperly relied on the sporadic use of the Honda at unspecified times prior to June 10 to conclude that the plaintiff continued to use the Honda after he took possession of the Suzuki.

Further, while there was testimony from the insured that he operated the Honda *after the June 10 accident,* that use can have no legitimate bearing on the issue concerning preaccident use. After June 10, the Suzuki was disabled and, because the policy imposed no requirement that the plaintiff dispose of his original vehicle, his subsequent use cannot fairly be interpreted to prejudice his position. The uncontroverted evidence indicated that, at the time the Suzuki was first possessed by the plaintiff, the Honda was essentially inoperable. While the plaintiff obviously was able to make some sporadic use of it at some unspecified times prior to the accident and then again for a time after the accident, the evidence before the arbitrators strongly militated toward a conclusion that the Suzuki was acquired to *replace* the Honda. In essence, the record provides no support for the majority arbitrators' precise finding that "it was not the claimant's intent, *as of May 2, 1988,* that the Suzuki, rather than the motorcycle he continued to drive, should be the insured vehicle." (Emphasis added.)

The trial court, in my view, improperly sustained the decision of the majority arbitrators. Where the language in the insurance policy that was prepared and provided by the defendant insurer failed to provide any definition of replacement vehicle, or any guidelines for determining whether replacement had occurred, that policy language must be construed in the insured's favor. Applying the intent-based approach to the facts of this case, I conclude that a fair interpretation of the evidence reveals unmistakably that the plaintiff effected a replacement of the Honda. I would reverse the judgment of the trial court.

Accordingly, I respectfully dissent.