GEORGE M. CAPOZZI *v.* LIBERTY MUTUAL
FIRE INSURANCE COMPANY
(14844)

CALLAHAN, BORDEN, BERDON, KATZ and PALMER, Js.

Argued March 31—decision released May 24, 1994

*William I. Garfinkel,* with whom was *Brian R. Shagan,* for the appellant (plaintiff).

*James E. Kernan,* for the appellee (defendant).

CALLAHAN, J. The plaintiff, George M. Capozzi, appealed to the Appellate Court from a judgment of the trial court confirming an arbitration award in favor of the defendant, Liberty Mutual Fire Insurance Company. The Appellate Court affirmed the judgment of the trial court, reasoning that the trial court had correctly determined that the plaintiff had waived his claim that the arbitrator's decision was untimely, and that there was substantial evidence that the plaintiff had not been operating a replacement vehicle when he was injured in an accident with an uninsured motorist on June 10, 1988. *Capozzi* v. *Liberty Mutual Fire Ins. Co.,* 32 Conn. App. 250, 629 A.2d 424 (1993).

On June 10, 1988, the date of the accident, the plaintiff was operating a 1986 Suzuki motorcycle that he had purchased on May 2, 1988. He had taken possession of the Suzuki on June 4, 1988.[1] At the time of the accident, the plaintiff had two separate policies of insurance with the defendant. One policy insured a 1980 Honda automobile and the other policy insured a 1985 Honda motorcycle. Both policies provided for uninsured motorists coverage, but specifically excluded such coverage for injuries sustained while occupying an uninsured vehicle owned by the injured party.[2]

The plaintiff claimed, however, that he had purchased the Suzuki motorcycle as a replacement vehicle for his Honda motorcycle and that the policy covering the Honda also provided coverage for the Suzuki. The provision in the policy relied upon by the plaintiff provides in pertinent part: "If the vehicle you acquire replaces

[1] In the interim between May 2 and June 4, 1988, the motorcycle was at Adams' Suzuki in Watertown being repaired.

[2] The clause in question provides in pertinent part: "We do not provide uninsured motorists coverage for bodily injury sustained by any person: 1. While occupying, or when struck by, any motor vehicle or motorcycle owned by that person or owned by you for which the security required by the Connecticut Financial Responsibility Act is not in effect. . . ."

one of the same type shown in the Schedule or in the Declarations, it will have the same coverage as the vehicle it replaced. . . ." The defendant disputed the plaintiff's claim that the Suzuki motorcycle was a replacement for the Honda motorcycle.

A majority of the arbitration panel found that the Suzuki was not a replacement vehicle for the Honda. The majority determined, therefore, that the plaintiff had been injured while occupying an uninsured vehicle. Consequently, they concluded that the exclusion in his policies applied and that the policies did not provide the plaintiff uninsured motorist coverage for his accident.

The trial court concluded that there was substantial evidence to support the decision of the arbitrators and confirmed the arbitration award. The Appellate Court affirmed the judgment of the trial court. We granted certification limited to the following question: "Whether the Appellate Court correctly held that there was substantial evidence to support the arbitrators' conclusion that when the plaintiff was injured he was not operating a 'replacement vehicle' and that he was therefore not covered by the uninsured motorist provisions of the defendant." *Capozzi* v. *Liberty Mutual Fire Ins. Co.,* 227 Conn. 925, 632 A.2d 702 (1993).

Whether a factual finding of an arbitration panel is supported by substantial evidence is ultimately a question of law subject to de novo review by this court. *Chmielewski* v. *Aetna Casualty & Surety Co.,* 218 Conn. 646, 667, 591 A.2d 101 (1991); *Connecticut Building Wrecking Co.* v. *Carothers,* 218 Conn. 580, 593, 590 A.2d 447 (1991). Substantial evidence will be found to exist if the record contains a substantial basis of fact from which the fact in issue can be reasonably inferred. *Adriani* v. *Commission on Human Rights & Opportunities,* 220 Conn. 307, 315, 596 A.2d 426 (1991); *Con-*

*necticut Light & Power Co.* v. *Dept. of Public Utility Control,* 216 Conn. 627, 639, 583 A.2d 906 (1990). Our review of the record persuades us that the Appellate Court, even under the liberal approach that it adopted,[3] properly concluded that there was substantial evidence to support the arbitrators' conclusion that the plaintiff was not operating a replacement vehicle at the time of his accident and, therefore, was not covered by the uninsured motorist provisions of his insurance policies.

The only testimonial evidence before the arbitration panel was the deposition of the plaintiff. In his deposition, the plaintiff stated that before he had purchased the Suzuki on May 2, 1988, it had been in an accident, but that it had been repaired and that he had obtained "the bike from Adams' Suzuki *completed* on June 4, 1988," and had driven it home. (Emphasis added.) Despite the apparent restoration of the Suzuki, the plaintiff testified that he intended to combine parts of the Honda with the Suzuki to make one motorcycle to replace the Honda. He also testified that, as of June 10, 1988, the Honda had been registered and insured.

Further, in response to a question by the defendant's attorney as to whether he had driven the Honda *"throughout* May and June, 1988," (emphasis added), the plaintiff replied that he had driven the Honda "[v]ery sporadically. It wasn't running barely running, I should say." Later, in answer to a question by his own

---

[3] The Appellate Court adopted the "alternative" approach to determine whether the newly acquired Suzuki was a replacement for the Honda. See *Capozzi* v. *Liberty Mutual Fire Ins. Co.,* supra, 32 Conn. App. 257–58. The "alternative" approach requires consideration of the totality of the circumstances, including the intent of the insured, to arrive at a determination as to whether a newly acquired vehicle is a replacement vehicle. Because it is not a part of the certified question and was not briefed, we do not reach the issue of whether we would adopt the "alternative" approach to defining a replacement vehicle or the more rigid "formalistic" approach, which requires that the vehicle to be replaced have been disposed of or be completely inoperable. Id., 257.

attorney as to whether the Honda was running on June 10, 1988, the plaintiff stated only that, "It would start." Subsequently, however, in response to another question by the defendant's counsel inquiring whether the Honda was running on June 10, 1988, the plaintiff answered: "It was running, yes." The plaintiff also testified that he had stopped riding the Honda only shortly *after* the accident and that he had kept the Honda and that it had been registered until he had sold it to a friend in the summer of 1989. Moreover, he stated that he had not notified the defendant of the June 10, 1988 accident or of his intention to replace the Honda with the Suzuki until September 8, 1988, and that he had done so then only on the advice of his attorney.

The plaintiff did state that it was his intention to replace the Honda with the Suzuki.[4] The arbitrators, however, were not bound to accept his testimony in this regard even if uncontradicted. *Bieluch* v. *Bieluch,* 199 Conn. 550, 555, 509 A.2d 8 (1986); *Acheson* v. *White,* 195 Conn. 211, 217, 487 A.2d 197 (1985); *Howell* v. *Administrator,* 174 Conn. 529, 532, 391 A.2d 165 (1978). They were entitled instead to infer from the plaintiff's actions and his testimony, that the Suzuki motorcycle had been purchased by the plaintiff not as

---

[4] The Appellate Court concluded that the relevant date for determining whether the plaintiff intended to replace the Honda with the Suzuki was June 4, 1988, the date the plaintiff took possession of the Suzuki. The arbitrators had found that May 2, 1988, the date of purchase, was the determinative date. The Appellate Court gave no reason for its conclusion other than stating that, "[u]nder the facts of this case," June 4, 1988, not May 2, 1988, was the date on which the plaintiff's intention must be assessed. Irrespective of whether May 2, 1988, or June 4, 1988, is considered the date on which to ascertain the plaintiff's intent, we agree with the Appellate Court that May 2, 1988, was "merely a starting point" for the arbitrators and that their decision can fairly be interpreted as their having concluded, from the evidence, that the plaintiff never had the intention during the entire time period from May 2, 1988, through June 10, 1988, the date of the accident, to replace the Honda with the Suzuki as the insured vehicle. *Capozzi* v. *Liberty Mutual Fire Ins. Co.,* supra, 32 Conn. App. 258–60.

a replacement vehicle but as an additional vehicle. See *State* v. *Williams,* 202 Conn. 349, 357, 521 A.2d 150 (1987) (whether an inference should be drawn is properly a question for the finder of fact); *State* v. *Vincent,* 194 Conn. 198, 208, 479 A.2d 237 (1984) (fact finder under no obligation to believe defendant, function to decide credibility, determine facts and draw reasonable and logical inferences).

The judgment of the Appellate Court is affirmed.

In this opinion BORDEN, KATZ and PALMER, Js., concurred.

BERDON, J., dissenting. I agree with the well reasoned dissenting opinion of Judge Schaller of the Appellate Court. *Capozzi* v. *Liberty Mutual Fire Ins. Co.,* 32 Conn. App. 250, 261, 629 A.2d 424 (1993) (*Schaller, J.,* dissenting). I therefore would reverse the judgment of the Appellate Court.

While I have no quarrel with the standard of review employed by the majority, I disagree with its application. First, I agree with the Appellate Court that the plaintiff's intent must be determined as of June 4, 1988, the date he took possession of the Suzuki, rather than May 2, 1988, the date he purchased it. While the Appellate Court did not cite any authority for this proposition, it only makes sense that a person cannot replace a vehicle with something he does not yet possess.

Second, I disagree with both the majority and the Appellate Court that May 2 was "merely the starting point" for the arbitrators. The arbitrators specifically concluded that "the issue of the Suzuki replacing the Honda should be determined as of May 2, 1988," and that "it was not the claimant's intent, as of May 2, 1988," that the Suzuki replace the Honda. It is clear

from this language from the arbitrators' decision that May 2 was not merely a starting point, but rather was the critical date for determining intent.

Third, I disagree with the majority's implicit conclusion in footnote 4 that even if June 4 is used as the date for determining the plaintiff's intent, there was substantial evidence to support the arbitrators' decision. As Judge Schaller points out in his dissent, there is an "absence of evidence that the [vehicle that was replaced by the Suzuki] was operated after June 4, the date when the plaintiff took *possession* of the Suzuki, and before June 10, the date on which the accident occurred." (Emphasis in original.) Id., 265. The fact that the plaintiff operated the Honda between May 2 and June 4, while the Suzuki was being repaired, is wholly consistent with his claim that he intended the Suzuki to replace the Honda. Indeed, the evidence cited by the majority that the plaintiff (1) drove the Suzuki on June 4, and (2) intended to use parts of the Honda in the Suzuki, supports the plaintiff's claim.

Finally, although the majority does not expressly decide which approach should be used to define "replacement vehicle," I agree with Judge Schaller that this state should adopt the so-called "alternative approach." The determinative factor in this approach is whether the insured intended that the newly purchased vehicle replace an insured vehicle. In contrast, the so-called "formalistic approach" requires that the insured vehicle be either rendered inoperable or disposed of at the time the new vehicle is purchased.

Accordingly, I respectfully dissent.