[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION RE: ARBITRATOR'S AWARD
On June 13, 1995, the plaintiffs, Henry M. Balavender, Joseph C. Corbo, and Physical Therapy and Sports Medicine Associates, P.C. (PTSMA), filed an application to vacate, CT Page 1213 correct, or modify an arbitration award dated May 15, 1995. On August 31, 1995, the defendant, Leonard C. Pare, filed a cross application to confirm the arbitration award.
 I.
The dispute that gave rise to the arbitration concerned the parties' business relationship. Balavender, Corbo, and Pare, all licensed physical therapists, launched a joint business venture in the late 1970's, in sports medicine and therapy, and by 1985, Balavender, Corbo, and Pare were equal shareholders in four corporations and equal partners in a single partnership.
On October 17, 1985, Balavender, Corbo and Pare entered into a reciprocal stock and partnership purchase agreement ("Purchase Agreement") which among other things required Balavender, Corbo, and Pare to submit to arbitration any dispute arising from their business relationship, the arbitration clause reading as follows:
 The business and operations of the companies and the Partnership shall be managed by the Stockholders in their capacities as directors and officers of the Companies and partners of the Partnership. The Stockholders hereby agree to submit to a disinterested third-party arbitrator to be selected by a majority of the Stockholders any and all matters in dispute and in controversy between them and concerning directly or indirectly, themselves and the affairs, conduct, operation and management of any of the Companies or of the Partnership to the end that all such disputes and controversies be resolved, determined and adjudged by such a disinterested party arbitrator. In the event that the Stockholders cannot agree on the selection of such a disinterested third party arbitrator, such disinterested third-party arbitrator shall be selected by the American Arbitration Association in Hartford, Connecticut.
On or about June 5, 1992, Pare invoked this arbitration provision and filed a demand for arbitration against the plaintiffs, claiming in his amended arbitration complaint dated October 27, 1992 that the plaintiffs wrongfully CT Page 1214 terminated his employment at PTSMA. He further claimed that prior to his termination, Balavender and Corbo wrongfully removed Pare from his position as director and officer of PTSMA, reduced his agreed upon compensation and refused Pare access to the corporate records. Accordingly, Pare sought monetary damages punitive damages, and an award reinstating his status as an employee, officer and director of PTSMA.
The plaintiffs answered Pare's amended arbitration complaint and filed a counterclaim wherein they alleged that Pare failed to perform his obligations as a director and officer of PTSMA, and violated a non-compete provision in the Purchase Agreement. Accordingly, the plaintiffs sought a judgment confirming the validity of Pare's termination and an award fixing the value of Pare's stock interest in PTSMA, in accordance with § 5 of the Purchase Agreement.
After 27 days of testimony and evidence, the arbitrator essentially found in favor of Pare, concluding that Pare was wrongfully terminated and that Balavender and Corbo wrongfully refused Pare access to the corporate records. The arbitrator found, however, that Pare had violated the non-compete provision in the Purchase Agreement. The arbitrator accordingly awarded Pare monetary damages offset by the damage Pare had caused the plaintiffs by violating the non-compete provision.
Even though the arbitrator determined that Pare was wrongfully terminated, the arbitrator refused to reinstate Pare as an employee, officer and director of PTSMA, concluding that the business and personal relationship between the parties was effectively destroyed and irreparable. Instead, the arbitrator opted to invoke and utilize § 2(c) of the Purchase Agreement, a provision which set forth procedures for the valuation and transfer of a terminated employee's stock interest in PTSMA. The arbitrator concluded that the value of the Pare's stock in PTSMA was $1,300,896.20 and that interest of ten percent per annum was due upon the sum from October 6, 1992, the date of Pare's wrongful termination. The arbitrator set forth a payment schedule in accordance with § 6 of the Purchase Agreement, and ordered the plaintiffs to jointly purchase from Pare his PTSMA stock in accordance with such schedule.
II. CT Page 1215
Plaintiffs now seek from this court an order vacating, modifying or correcting the arbitration award. The plaintiffs complain in summary that: (1) the arbitrator disregarded § 2(c) of the Purchase Agreement and exceeded his power by wrongfully requiring Balavender and Corbo, as individuals, to purchase Pare's stock interest in PTSMA; (2) the arbitrator failed to compute the value of Pare's stock in PTSMA based upon the company's gross earnings determined in accordance with generally accepted accounting principles and practices, as required by § 5 of the Purchase Agreement; and, (3) the arbitrator failed to address which party is responsible for an outstanding accounting bill.
 III.
The parties concede that the submission to the arbitrator in this matter was unrestricted. The scope of judicial review of an arbitration award based upon an unrestricted submission is well established as being delineated by the scope of the parties agreement. AmericanUniversal Ins. Co. v. DelGreco, 205 Conn. 178, 185, (1987). The resulting award is not subject to de novo review even for errors of law so long as the award conforms to the submission. Hartford v. Board of Mediation Arbitration,211 Conn. 7, 14, (1989); New Haven v. AFSCME, Council 15,Local 530, 208 Conn. 411, 415-16, (1988). Because arbitration is favored as a means of settling private disputes, judicial review of arbitration awards is conducted in a manner designed to minimize interference with an efficient and economical system of alternative dispute resolution. Middletown v. Police Local, No. 1361, 187 Conn. 228,230, (1982); State v. Connecticut Employees UnionIndependent, 184 Conn. 578, 579, (1981). Garrity v.McCaskey, 223 Conn. 1, 4-5, (1992).
Even in the case of an unrestricted submission, there are three recognized grounds for vacating an award: (1) the claimed unconstitutionality of the statute; Caldor, Inc. v.Thornton, 191 Conn. 336, 344, (1983), Aff'd, 472 U.S. 703, (1985); (2) the award violates clear public policy;Watertown Police Union Local 541 v. Watertown, 210 Conn. 333,339, (1989); or (3) the award contravenes one or more of the statutory proscriptions of General Statutes § 52-418.Carroll v. Aetna Casualty Surety Co., 189 Conn. 16, 22-23, CT Page 1216 (1983).
 IV.
The plaintiffs first argue that the arbitration award should be corrected or vacated under general statutes § 62-418(a)(4) because it violates the public policy of protecting the corporate structure. The plaintiffs maintain that the Purchase Agreement requires PTSMA to purchase the stock of Balavender, Corbo, or Pare, in the event that any of them are involuntarily terminated, but contains no provision requiring Balavender and Corbo to jointly purchase Pare's stock along with PTSMA. The plaintiffs argue that the award violates public policy because it holds individual stockholders liable for a corporate obligation without any evidence that would justify piercing the corporate veil.
The plaintiffs are correct that pursuant to the Purchase Agreement PTSMA is required to purchase Pare's stock. Section 2(c) of the Purchase Agreement, entitled "Retirement or Termination of Stockholder's Employment," states in relevant part:
In the event that . . . (ii) any stockholder's employment is involuntarily terminated . . . then the affected Stockholder shall sell and transfer to the respective Companies and the Partnership, and the respective Companies and the Partnership shall purchase all of his Shares and his entire Partnership Interest at the price determined in accordance with Section 5 hereof, which price shall be paid in the manner set forth in Section 6 hereof.
Moreover, there is no dispute that at the time of Pare's termination the partnership was dissolved and the only company remaining was PTSMA.
The defendant, however, claims that during the arbitration proceedings, the plaintiffs themselves argued to the arbitrator that it would be in the best interest of everyone concerned if the arbitrator required Balavender and Corbo to purchase Pare's stock. Therefore, the defendant argues that the award was in compliance with plaintiffs' expressed position at the arbitration hearing. CT Page 1217
The plaintiffs concede in their brief that they argued for individual liability during the arbitration proceedings, but claim that it was an error on the part of counsel representing plaintiffs at that time. They maintain that the original submission to the arbitrator only permitted a finding that PTSMA was required to purchase Pare's stock.
There appears to be no good reason why parties to an arbitration proceeding cannot by mutual agreement or waiver expand or alter the remedies conferrable by the Arbitrator. The general rule stated in 4 Am.Jur.2d Alternative Dispute Resolution § 249, relying on cases reported in several jurisdictions is as follows: "Through the operation of waiver or estoppel, a party may become concluded by an award which otherwise would be open to attack. If his actions, with full knowledge of all of the facts, are such as to amount to an acceptance of an award, he will be held to have waived his right to object to it. . . . Where a party admits of record that the award passes on the matters submitted, he is estopped from attacking it later on the ground that it was not warranted by the terms of the submission. Furthermore, a party may waive its objection to an award by his continued participation in proceedings without objecting." See also White v. Kampner, 229 Conn. 465, 476-77, (1994); Capozzi v. Liberty Mutual Fire Ins. Co.,32 Conn. App. 250, 255-56, (1993).
Under the circumstances of this arbitration, the requirement of the award that Balavender and Corbo should purchase the stock cannot be held to be erroneous. The main point of contention between the parties at the arbitration was the proper method to value Pare's stock and the arbitrator concluded that the proper method to value the stock was the method advocated by the defendant, which produced a valuation much higher than the method advocated by the plaintiffs. Unhappiness with this aspect of the award is not an adequate basis for plaintiffs to seek an order vacating the arbitration award because the arbitrator ordered Balavender and Corbo to purchase the stock.
 V.
The plaintiffs claim that the arbitrator failed to interpret "gross earnings" in accordance with generally accepted accounting principles as required by § 5 of the CT Page 1218 Purchase Agreement.
Section 5, entitled "Determination of Purchase Price," states in relevant part:
The aggregate purchase price of each Stockholder's Shares and his entire Partnership Interest purchased pursuant to the terms and conditions of . . . Section . . . 2(c) hereof shall be . . . (ii) one-fourth of the aggregate of the Companies and Partnership's gross earnings (determined in accordance with generally accepted accounting principles and practices, consistently applied) for its most recently completed fiscal year. . . .
The plaintiffs claim that they presented the only testimony as to the proper definition of "gross earnings," yet the arbitrator decided instead to accept the definition of gross earnings contained in Black's Legal Dictionary. The plaintiffs argue that the definition in Black's Legal Dictionary does not accord to generally accepted accounting principles. Therefore, the plaintiffs argue that the award should be vacated because the arbitrator has so imperfectly executed his powers that a mutual, final and definite award upon the subject matter has not been made.
In the arbitration proceeding plaintiffs advanced the claim that "gross earnings," determined in accordance with generally accepted accounting principles, essentially meant profits and that the testimony of a certified public accountant during the hearings corroborate this claim.
The arbitrator's conclusion must be viewed in the context of the Purchase Agreement which was in evidence. Section 6 of the Purchase Agreement, entitled "Payment of Purchase Price," states in relevant part:
The purchase price of the Shares purchased pursuant to . . . Section 2(c) shall be paid as follows: Each purchaser shall execute on the date of such purchase and delivery of the Shares a promissory note for the purchase price, which promissory note shall provide for interest on the unpaid balance, calculated monthly, at a rate of ten (10%) percent per annum, and shall provide for equal quarterly payments CT Page 1219 of $7,500 each plus accrued interests, until such time as the principal shall be paid in full commencing one year following the date of the purchase by the purchaser. The purchaser shall have an unqualified right to accelerate payments of part or all amounts of principal and accrued interest due.
If the purchasers of the Shares are the Companies, the Companies shall be obligated to pre-pay each of their obligations under the promissory note (a) to the extent of the difference between a sum equal to twenty (20%) percent of the respective Company's net earnings before deduction of federal and state income taxes for any year, determined in accordance with generally accepted accounting principles and practices, consistently applied, and the aggregate quarterly payments of accrued interest and principal to be made during said fiscal year in accordance with the promissory note . . . .
(Emphasis added.)
The plaintiffs also took the position that the term "net earnings," also meant profits as determined according to generally accepted accounting principles. Under these circumstances, it is clear that it was within the discretion of the arbitrator to find that "gross earnings" was something very different from net profits or net earnings. In accordance with accepted legal practice the arbitrator was not bound by expert testimony so long as he relied on other competent evidence before him. We cannot rule as a matter of law that the definition in Black's Law Dictionary was erroneous.
 VI.
The plaintiffs third claim that the arbitrator failed to rule on a submitted matter is not persuasive. The plaintiffs claim that the parties submitted to the arbitrator the question of which party was responsible for an outstanding accounting bill. While not addressing this question specifically, the arbitrator stated at the end of his memorandum of decision that all remaining claims for relief were rejected. In effect, this was a ruling on all matters submitted, and rejected any relief sought with regard to the outstanding accounting bill, which would therefore remain the responsibility of the parties to whom CT Page 1220 it was submitted.
Accordingly, application to vacate, correct or modify the arbitration award is denied and defendant's cross application to confirm the arbitration award is granted.
Wagner, J.