[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Greenwich Operating Fund (GOF) has applied to confirm, and Crompton Corporation has moved to vacate, modify or correct, an arbitration award. The court heard argument on this matter on November 5, 2001, and the parties submitted additional papers until November 21, 2001.
 I — Background
The lengthy and tenaciously fought dispute between the parties arises out of a lease for office space in Greenwich, Connecticut executed by the predecessor to GOF, the landlord, and the predecessor to Crompton as tenant (Lease), and the proper calculation of the payments due GOF CT Page 681 thereunder. Several litigations ensued which were eventually terminated after court intervention, by a letter agreement executed by the parties in June 2001 (Settlement Agreement). In this Settlement Agreement, GOF and Crompton agreed to "commence binding, expedited arbitration" in accordance with provisions of the Lease which called for arbitration under the Commercial Arbitration Rules of the American Arbitration Association (AAA).
According to the Settlement Agreement there could be two separate arbitrations between subject matter, and scope of the so-called "First Arbitration" dealt with the computation of payments due under the Lease which contained provisions for passing increased building operating expenses along to the tenant. Specifically, the First Arbitration was to decide two questions:
 1. Whether the elevator/escalator maintenance Expenses have been accurately included in the 1994/95 Operating Year ("Base Year") and subsequent Operating Years; and
 2. Whether attorney and appraisal fees and costs for Landlord's tax appeal litigation should (i) not have been included as part of Expenses, and instead, added to Taxes, or (ii) included in Expenses, and if so, attributed, in whole or in pail, to the Base Year and/or any subsequent Operating Year; (sic)
The parties agreed that, subject to the resolution of the above two questions, Crompton owed GOF $384,659.86 (the "Net Amount") and the issues to be determined were whether the Net Amount should be reduced based upon the resolution of the two questions set forth above and the amount of interest due GOF, if any, based upon the Lease provisions.
The Arbitrator rendered an Award on September 26, 2001. The Award contained the following elements:
(1) Crompton was to pay GOF the Net Amount of $384,659.86 with interest from January 1, 2000;
(2) determined that the elevator/escalator maintenance expenses were not correctly calculated and Crompton was due a credit;
(3) determined that the tax appeal fees and expenses should have been added to taxes but that no adjustment should be made; and
(4) determined that the Arbitrator had the right to award attorneys fees to GOF but did not make such an award in this First Arbitration, and reserved GOF's right to advance such a claim in the Second Arbitration. CT Page 682 The complete text of the Award is found in Appendix A to this decision. On October 2001, the Arbitrator issued a letter, responding to various communications from the parties, which sought to clarify his Award. The complete text of this letter is found in Appendix B to this decision.
 II — Standard of Review
Similar to the federal courts and other jurisdictions, Connecticut has a strong policy favoring arbitration as a means of resolving disputes and enforcing arbitration decisions. Stratford v. Int'l Assn. ofFirefighters, AFL. — CIO Local 998, 248 Conn. 108 (1999); Conn. Gen. Statutes § 52-408. A superior court to which an application to confirm an arbitration award is made, must confirm it unless it is vacated, modified or corrected. Gen. Stat. § 52-417. The bases for vacating an award are:
 (a) Upon the application of any party to an arbitration, the superior court for the judicial district in which one of the parties resides or, in a controversy concerning land, for the judicial district in which the land is situated or, when the court is not in session, any judge thereof, shall make an order vacating the award if it finds any of the following defects: (1) If the award has been procured by corruption, fraud, or undue means; (2) if there has been evident partiality or corruption on the part of any arbitrator; (3) if the arbitrators have been guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown or in refusing to hear evidence pertinent and material to the controversy or of any other action by which the rights of any party have been prejudiced; or (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made.
Gen. Stat. § 52-418.
The basis for modifying or correcting an award are:
 (a) Upon the application of any party to an arbitration, the superior court for the judicial district in which one of the parties resides or, in a controversy concerning land, for the judicial district in which the land is situated, or, when the court is not in session, any judge thereof, shall make an order modifying or correcting the award if it finds any of the following defects: (1) If there has been an evident material miscalculation of figures or an evident material mistake in the description of any person, thing or property referred to in the award; (2) if the arbitrators have awarded upon a matter not submitted to them unless it is a matter not affecting the merits of the decision CT Page 683 upon the matters submitted; or (3) if the award is imperfect in matter of form not affecting the merits of the controversy.
Gen. Stat. § 52-419.
The arbitration which is the subject of this proceeding is a creature of contract and, as such, counts are reluctant to interfere substantively with the arbitral product; Stratford v. Int'l Assn...Local 998, supra; and the court should make every reasonable presumption in favor of the award. Board of Education of City of Hartford v. Hartford Federation ofSchool Secretaries, 26 Conn. App. 351 (1992).
 III — Discussion
At the outset, GOF contends that Crompton has waived its right to contest the Award. This argument is based on the provision in the Lease arbitration clause stating that the decision of an Arbitrator shall be "final and conclusive on the parties" (Lease, Article 38.01.) and a provision in the Settlement Agreement which calls for payment by Crompton of whatever the Arbitrator decides within five days of the Award.
GOF misconstrues the effect of the finality provision in the Lease. That language makes clear that the arbitration at issue here is a binding arbitration, rather than an advisory or non-binding proceeding. This court concludes that the final and conclusive language does not act to waive Crompton's right to avail itself of the statutory right to seek vacation or modification of the Award. Indeed, one is hard pressed to see how GOF can seek to vindicate its rights by confirming the Award pursuant to Gen. Stat. § 52-417 yet object to Crompton's exercise of its rights under the companion statutes (§§ 52-418, 419) to seek vacation or modification.
Crompton's motion to vacate, correct or modify sets forth three arguments contending that the Arbitrator prejudiced its rights and exceeded or imperfectly executed his powers, thus establishing grounds for vacating under § 52-418 (a)(3) and (4)[1]. Specifically, Crompton contends that the Arbitrator was guilty of misconduct by allowing GOF to submit two affidavits after the hearing on August 14 and 15, 2001 in the First Arbitration was concluded. These affidavits and some additional documents were provided by GOF with its post-hearing brief Compton, [Crompton], also filed a post-hearing brief simultaneously. Thereafter, Crompton filed a series of letters objecting to the affidavits. On September 20, 2001 the Arbitrator responded by letter stating:
It is my considered opinion and decision that I, as arbitrator, in CT Page 684 reviewing the testimony and evidence offered, as well as the briefs together with appended exhibits, shall determine its admissibility, relevance and materiality and give all or any part of it such weight as I deem it entitled to after consideration of any objection made to its admission. (Rules 33(b) and 34(a)).
The court holds that the Arbitrator's determination to accept and give whatever weight he deemed appropriate to the post-hearing submissions without granting Crompton's request to rebut or cross-examine was a proper exercise of his authority and discretion, and not a basis to vacate the award under § 52-418 (a)(3). Under the Commercial Arbitration Rules of the AAA, arbitrators are given substantial authority and discretion to conduct the arbitration and receive and consider evidence. Following the close of the hearing the Arbitrator ordered that the post-hearing briefs of GOF and Crompton be the final filings by the parties. This turned out not to be the case as the parties continued filing letters thereafter. Nevertheless, in his considered September 20, 2001 letter the Arbitrator determined that he would give what weight all evidence submitted was entitled to after considering the objections to it. Whether he considered the affidavits or Crompton's objections to and commentary upon them, considered both, or neither, is unknown. Nevertheless, he had authority to consider post-hearing evidence if he so directed. AAA Commercial Arbitration Rule 34(b). In short, it appears clearly to this court that the Arbitrator acted in a prudent and impartial manner in the face of the many and prolonged adversarial tactics of the parties.
Furthermore, under Connecticut law an arbitrator's failure or refusal to receive evidence is not automatically "misconduct" under Gen. Stat. § 52-418 (a)(3). OG/O'Connell Joint v. Chase Family LimitedPartnership No. 3, 203 Conn. 133, 149 (1987). Crompton has not shown that the contested action of the Arbitrator has caused it prejudice. See AnnHoward's Apricots Restaurant, Inc. v. Commission of Human Rights andOpportunities, 237 Conn. 209 (1996). The responsibility of this court is to determine whether Crompton was deprived of a full and fair hearing of its dispute with GOF. Clairol, Inc. v. Enertrac, Corp., 44 Conn. App. 506
cert. denied 241 Conn. 906 (1997) (holding that failure to allow cross examination did not result in denial of full and fair hearing). This court determines, after careful review, that the Arbitrator provided such a hearing.
Crompton's second contention is that part of the Award is unclear and not subject to calculation. Crompton states that Paragraph 3 of the award is confusing, or wrong, and that a dollar amount cannot be calculated leaving no dollar figure to be confirmed by the court. That is not the case. The Arbitrator found that no adjustment to the Net Amount should be CT Page 685 made. The award and the clarification letter of October 20, 2001 make it clear that while an error may have occurred by including $11,435.84 in the Base Year Expense Factor he was ordering "no adjustment." He went on to say that it was "a mistake that the parties would have to continue to live with" and "the Base Year Expense Factor should not be changed in any respect." It is quite clear to the court that the Net Amount is unaltered by the finding in Paragraph 3.
Crompton also argued that it is wrong, and contrary to the Arbitrator's intent not to deduct the $11,435.84 from Expenses. It is not this court's domain to determine whether the Arbitrator was substantively wrong.Stratford v. Int'l Ass'n...Local 998, supra. Indeed, even if it were, there is little evidence to permit the court determine whether in fact the Arbitrator was right or wrong. What is not in doubt, however, is the Arbitrator's intent. In the language of his October 20, 2001 letter, quoted above, he makes perfectly clear that even though he determined that the $11,435.84 was improperly applied it was a mistake the parties would have to live with, and he was ordering no change.
The remaining issue involves the Arbitrator's decision respecting attorneys fees. The Award stated that it did not include any attorneys fees and expenses payable to GOF because there were no bills and receipts presented as evidence (although there does appear to have been testimony concerning the fees and expenses). The Arbitrator went on to say explicitly that he reserved GOF's right to submit such supporting documentation at the Second Arbitration which was scheduled between the parties. As the Arbitrator stated in the Award, he had authority under both the Settlement Agreement and Lease to award attorneys fees and costs. The Arbitrator's intent appears to have been that the Award would be supplemented or amended by a later determination concerning such fees and expenses. It also appears that the Arbitrator expected to be the arbitrator of the Second Arbitration proceeding. Two circumstances have subsequently intervened. First the Arbitrator has communicated to the AAA that he will not be available to preside over any Second Arbitration, and this information was provided to GOF and Crompton by the AAA in a letter dated November 6, 2001. Second, according to papers before the court, it is more than a possibility that there will be no Second Arbitration, for reasons that need not be delved into in this decision. Thus, the reasonable expectations of the Arbitrator and one if not both parties at the time the Award was issued, are likely to be frustrated.
In these circumstances, and in light of the determinations made above, the court is faced with three possible courses of action: (1) confirm the Award which would leave the fees issue to be resolved only if and when a Second Arbitration takes place; (2) confirm the first three paragraphs of the Award and vacate Paragraph 4 on the ground that the Arbitrator did CT Page 686 not have authority to transfer the fee issue to the Second Arbitration; which would allow Crompton and GOF to arbitrate the fees issue once again; and (3) confirm the first three paragraphs and remand Paragraph 4 to the Arbitrator for a final and more definite decision. The court clearly has the authority to effect either the first or second option. See Housing Authority of Stamford v. Local 1303 — 260, Council 4,AFSCME, 54 Conn App. 786 (2000). The third option is more problematic because, as Crompton points out the provisions of Gen. Stat. § 52-418
(b) require any remand to be within the period an award can be made which in this case was September 26, 2001. GOF contends, on the other hand, that Crompton has waived the September 26 limit by continuing to make submissions to the Arbitrator well after that date and which resulted in the Arbitrator issuing his clarification letter on October 20, 2001.
The court concludes that Crompton has waived any objection it might have to the time limit for the Award, and therefore, the court has the authority to remand the issue of the attorney fees to the Arbitrator for whatever proceedings he deems necessary to resolve this last remaining issue. In reaching this conclusion the court makes reference to DiamondFertilizer Chemical Corp. v. Commodity Trading Int'l. Corp.,211 Conn. 541 (1989) where the Supreme Court found that a party by proceeding with an arbitration knowing that an award would be untimely waived its right to object to the timeliness. While this case is not on all fours with Diamond Fertilizer, the concept is the same. This conclusion is fortified by the fact it appears to conform to the intention of the parties at the time they entered into the Settlement Agreement, i.e. to have the Arbitrator decide all the issues submitted in the First Arbitration, including the fees and expenses question. This arbitration arose out a written contract, the Settlement Agreement, between the parties. It almost goes without saying that a court should strive to give effect to the intent of the parties in arriving at an agreement. Remanding the fees and costs question to the Arbitrator does just that.
 IV — Conclusion
Therefore, in accordance with Gen. Stat. § 52-417 the court orders the Award confirmed in all respects except Paragraph 4 and that portion, pursuant to Gen. Stat. § 52-418, is remanded to the Arbitrator for a final determination.
Finally, the court compliments counsel for both parties for the quality of the legal memoranda presented on behalf of their clients. They were comprehensive, well-reasoned and lucid. The court is confident that these manifest professional attributes will be applied to the expeditious, fair and reasonable resolution of this matter. CT Page 687
ADAMS, J.
APPENDIX A
 AWARD OF ARBITRATOR I, THE UNDERSIGNED ARBITRATOR, having been designated in accordance with the arbitration agreement entered into between the above-named parties dated July 14, 1993 and June 4, 2001, and having been duly sworn, and having duly heard the proofs and allegations of the parties, do hereby, AWARD, as follows:
 (1) Respondent to pay Claimant the "Net Amount" of $384,659.86, plus interest, as provided in the "Settlement Agreement" dated June 4, 2001. The interest to be applied to the Net Amount shall be in accordance with the Prime Rate (or equivalent rate of Citibank, N.A., pursuant to Paragraph 4 of the "Fifth Amendment to the Lease" dated January 6, 1999. The interest shall accrue from January 1, 2000, and shall be calculated at the Prime Rates of Citibank, N.A. in effect during such various periods of time from January 1, 2000 until the Net Amount, plus interest, are paid within five (days) of this Award as stipulated in the Settlement Agreement. If payment is not made within the specified Five days, then, from the sixth day forward, the Respondent shall be charged at the Default Interest Rate as specified in the "Fifth Amendment to Lease."
(2) Re: Disputed Item #1
 Respondent shall be entitled to a credit against Expense Payments for each of the Operating Years under the Lease because it is the Arbitrator's determination that the Expense Base Factor should have been higher by the amount of $2,548.54, representing the net adjustment for the settlement of the Otis invoices (as affecting the Base Year) per one of Respondent's three calculations shown as part of its Exhibit D in its Post-Hearing Brief.
 Re: Disputed Item #2
 (3) It is Arbitrator's determination that attorney fees and costs for Claimant's tax appeal litigation should be added to Taxes instead of being allocated Expenses. However, it is also Arbitrator's decision that no adjustment shall be made regarding the $11,435.84 CT Page 688 inadvertently charged to Base Year Expenses by Claimant.
 (4) While Arbitrator has the right to award the Claimant legal fees and expenses in connection with its controversy and dispute with Respondent under the terms of the Lease and the provisions of the Settlement Agreement, the Arbitrator is not making any award for such fees and costs in this First Arbitration due to Claimant's failure to produce competent evidence, such as bills and receipts. However, in consideration of the agreement between the parties hereto that here will be a Second Arbitration involving issues under the Lease, the Arbitrator hereby reserves the Claimant's right to submit such supporting document at the Second Arbitration.
The administrative fees and expenses of the American Arbitration Association ("the Association") totaling $5,237.88 shall be borne equally by the parties.
Therefore, Respondent shall pay to the Claimant the sum of $2,381.06, representing that portion of administrative fees previously advanced by the Claimant to the Association. Respondent shall pay to the Association the sum of 237.88, representing that portion of administrative fees still due the Association.
The compensation and expenses of the Arbitrator, totaling $7,500.00, shall be borne equally by the parties.
Therefore, Claimant shall pay to the Association the sum of $250.00, representing that portion of Arbitrator's compensation still outstanding. Respondent shall pay to the Association the sum of $3,750.00, representing that portion of Arbitrator's compensation still outstanding.
This Award is in full settlement of all claims and counterclaims submitted to this Arbitration. All claims not expressly granted herein are hereby denied.
APPENDIX B
This letter is in response to the various correspondence received by the American Arbitration Association from the attorneys and/or representatives of the respective parties in the above-referenced matter requesting clarification of my decision as Arbitrator which was rendered on September 26, 2001.
The focus of the said correspondence relates to a difference in interpretation as to what paragraph #3 in my written statement of the CT Page 689 Award is intended to accomplish.
Paragraph #3 sets forth my decision with respect to Disputed Item #2 as outlined in the Claimant's Demand for Arbitration and as also stipulated in the Settlement Agreement dated June 4, 2001, as well as other submitted documents and papers.
So that there is no misunderstanding as to the questions raised in Disputed Item #2, we are repeating it below:
 "Whether attorney and appraisal fees and costs for Landlord's tax appeal litigation should (i) not have been included as part of Expenses and, instead, added to Taxes or (ii) included in Expenses, and if so, attributed, in whole or in part, to the Base Year and/or any subsequent Operating Year."
The first sentence of paragraph #3 in my Award decision responds to item (i) above in stating that costs for Claimant's tax appeal litigation should be added to Taxes instead of being allocated to Expenses.
The second sentence of paragraph #3 was intended to clarify the fact that, every though $11,435.84, comprising a part of the total tax appeal litigation expenses, had inadvertently been included in the Threshold and, therefore, Base Year Expense Factor, no change was warranted at this time. In other words, it was a mistake that the parties would have to continue to live with. If the Base Year Expense Factor was thusly overstated (by including an item that should not have been added thereto), then this would automatically redound to the future benefit of the Tenant. On the other hand, if something was excluded from the Base Year Expense Factor that should have been therein included, then the advantage would accrue to the Landlord.
In other words, I had made a determination to the effect that the Base Year Expense Factor should not be changed in any respect. I trust that this letter will help clarify any ambiguity or confusion as to the intent of my Award decision. In any event, I do not intend any further commentary on my decision.